[No. 7,033.—In Bank.]
Aug. 26, 1882.

## SACRAMENTO VALLEY RECLAMATION COMPANY *v.* HENRY E. COOK.

SWAMP AND OVERFLOWED LAND—PATENT—CONFLICTING PATENTS—JURISDICTION OF LAND DEPARTMENT—RELATION—EJECTMENT—EVIDENCE. The plaintiff, in an action of ejectment, deraigned title under a United States patent dated June 3, 1874. From the approved list upon which the same was issued it appeared that the land had been claimed by the State under Section 4 of the Act of Congress of July 23, 1866, as having been segregated by the State as swamp lands prior to that date, and that approved amended maps showing such segregation had been returned by the United States Surveyor General. The defendant gave in evidence

a patent of the United States of the same land to his predecessor in title of date August 5, 1869, and offered evidence tending to prove that the land, at the date of the Swamp Land Act, was not swamp or overflowed land; but the evidence was rejected. It was admitted by the plaintiff that the land was surveyed by the United States surveyors and returned and represented on the township plat approved by the United States Surveyor General, December 3, 1853, as high lands.

*Held:* The State, by the selection and segregation of said lands as swamp and overflowed prior to July 23, 1866, acquired the right under the Act of that date to have the character of said lands determined in the mode prescribed by that Act, and any one who purchased said lands from the United States pending the proceedings for the determination of the question of right of the State to said lands took subject to that determination, which, if in favor of the State, entitled it to a patent which would relate back to the twenty-eighth day of September, 1850, the date of the passage of the Act granting swamp and overflowed lands to the State. The Secretary of the Interior having determined the character of said lands, evidence tending to impeach that determination was clearly inadmissible in this action and properly ruled out by the Court.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Sixth District Court of the County of Yolo. DENSON, J.

*Belcher & Belcher,* for Appellant.

*A. C. Adams* and *W. B. Treadwell,* for Respondent.

SHARPSTEIN, J.:

The respondent claims that the demanded premises were swamp and overflowed lands; and that as such they were granted to the State by the Act of Congress of the twenty-eighth of September, 1850. That said lands were selected and segregated by the State prior to the passage of the Act of July 23, 1866, and that after the passage of said last mentioned Act the character of said lands was determined by testimony taken by the United States Surveyor General, who decided that said lands were swamp and overflowed lands, and that said decision was approved by the Commissioner of the General Land Office of the United States, and that in accordance with said determination and decision, said lands were, on the twelfth of December, 1873, listed to the State. On June 3, 1874, a patent of said lands was issued by the United States to the State, which, on the eighteenth of

August, 1874, issued a patent of the same lands to the respondent.

The appellant claims title to the same lands under a patent of the United States issued to William C. Belcher on the fifth of August, 1869, whose title, through mesne conveyance, vested in appellant on the fourteenth of December, 1870.

It is sufficiently obvious that unless the title to said lands had passed out of the United States prior to the issuance of said patent to Belcher, the judgment in this action was erroneous; so that the only question which we now have to consider is, whether the title to said lands had vested in the State prior to the date of the patent to Belcher.

It is as well settled as anything can be by the Courts, that the donation of swamp and overflowed lands by the United States to the States in which such lands were situated at the date of the passage of the Act of September 28, 1850, "was a grant *in presenti,* by which the title to those lands passed at once to the States in which they lay, except as to States admitted to the Union after its passage." (*French* v. *Fyan,* 93 U. S. 169.)

In order, however, to avoid confusion, it was necessary to provide a method of determining what lands were "swamp and overflowed lands." And so it was provided in the second section of the Swamp Land Act, "that it shall be the duty of the Secretary of the Interior, as soon as practicable after the passage of this Act, to make out an accurate list and plats of the land described as aforesaid, and transmit the same to the Governor of the State, and at the request of the Governor, cause a patent to be issued to the State therefor, and on that patent the fee simple to said lands shall vest in the State, subject to the disposal of the Legislature thereof." And in *French* v. *Fyan, supra,* the Court says: " We are of the opinion that this section devolved upon the Secretary, as the head of the department which administered the affairs of the public lands, the duty, and conferred on him the power, of determining what lands were of the description granted by that Act, and made his office the tribunal whose decision on that subject was to be controlling."

But we are not advised that the appellant disputes the conclusiveness of the determination of the Secretary of the Inte-

rior upon the question, whether any particular lands are swamp and overflowed, within the meaning of the Swamp Land Act. On the other hand, he claims that the Department, of which the Secretary is the head, did necessarily determine, when it sold the lands in controversy to Belcher, that such lands were not swamp and overflowed, within the meaning of said Act. How this might be in the absence of any such provisions of law as those contained in Section 4 of the Act of Congress of July 23, 1866, entitled "An Act to quiet land titles in California," it may not be necessary to consider in this case. The last clause of that section seems to have been inserted with special reference to cases in which the State, prior to the passage of said Act, had selected and segregated lands as swamp and overflowed, which had not, at the date of said Act, been listed to said State.

The clause to which we now refer, reads as follows: "If the authorities of said State shall claim as swamp and overflowed land any land not represented as such upon the map or in the returns of the surveyors, the character of such land at the date of the grant, September 28, 1850, and the right of the State to the same, shall be determined by testimony to be taken before the Surveyor General, who shall decide the same, subject to the approval of the Commissioner of the Land-office." The State having selected and segregated, prior to the passage of said Act, the lands in controversy, as swamp and overflowed, was in a position to have the character of said lands and the right of the State thereto determined in the mode prescribed in said clause. And that was done, as appears by a certificate of the proper officers of the United States Land Department, of which the following is a copy:

"GENERAL LAND OFFICE, ⎫
"SWAMP LAND DIVISION, December 10, 1873. ⎭

" This certifies, that the foregoing tracts of land are claimed by the State of California, under the fourth section of the Act of Congress, approved July 23, 1866, as having been segregated by said State as swamp lands prior to that date, by surveys in conformity with the system of surveys adopted by the United States.

"Approved amended maps showing such segregation have

been returned by the United States Surveyor General for California, and are now on file in this office; also, that said lands have been inadvertently patented to individuals who did not acquire any right thereto by virtue of any claim subsisting on or prior to the date of said Act of July 23, 1866; said individuals have been duly notified that said patents are erroneous and illegal, and requested to surrender the same, with a relinquishment of the apparent title acquired thereby, but they have refused or neglected to comply with said notice and request.

" Said lists have been compared with the tract books and township plats of this office, and found to be free from any valid, legal interference by sale or otherwise, subsisting on or prior to the date of said Act of July 23, 1866."

The grant made by the Act of September 28, 1850, being a grant *in presenti,* the patent issued to the State related back and gave certainty to the title as of the date of the grant. (*French* v. *Fyan, supra.*)   So that the title of the State under which the plaintiff claims is the elder and better title, unless the fact that the Land Department of the United States after the passage of the Act of July 23, 1866, and before listing said lands to the State, sold and patented the same to Belcher, can be held to be a determination by said Department that said lands were not swamp and overflowed.   We do not think that the sale and patent to Belcher can be so construed.   The State, by the selection and segregation of said lands as swamp and overflowed prior to July 23, 1866, 'had acquired the right under the Act of that date to have the character of said lands determined in the mode prescribed by that Act; and any one who purchased said lands from the United States pending the proceedings for the determination of the question of the right of the State to said lands, took subject to that determination, which if in favor of the State entitled it to a patent which would relate back to the twenty-eighth of September, 1850—the date of the passage of the Act granting swamp and overflowed lands to the State.

And this view appears to us to receive some support from what the Supreme Court of the United States said in *R. R. Co.* v. *Smith,* 9 Wallace, 95, from which we quote the following : "By the second section of the Act of 1850 it was made

the duty of the Secretary of the Interior to ascertain this fact (what lands were swamp and overflowed) and furnish the State with evidence of it. Must the State lose the land, though clearly swamp land, because that officer has neglected to do this? The right of the States did not depend on his action, but on the Act of Congress, and though the States might be embarrassed in the assertion of the right by the delay or failure of the Secretary, to ascertain and make out lists of these lands, the right of the States to them could not be defeated by that delay."

In this case it does not appear that the Secretary had, prior to July 23, 1866, determined the character of the demanded premises, although the State had prior to that date selected and segregated said lands as swamp and overflowed; and one object of the Act of July 23, 1866, was to enable the State to establish its claim to said lands as swamp and overflowed. We do not think that that object could be defeated by the issuance of a patent of said lands to some outside party, pending the proceedings provided for in said Act.

The Secretary of the Interior having determined the character of said land, evidence tending to impeach that determination was clearly inadmissible in this action, and properly ruled out by the Court.

Judgment and order denying motion for a new trial affirmed.

MORRISON, C. J., and McKINSTRY, THORNTON, ROSS, McKEE and MYRICK, JJ., concurred.