# Cases Argued and Determined

IN THE

# SUPREME COURT

OF THE

# State of South Dakota.

---

## WELLS v. PENNINGTON COUNTY.

1. Section 2477, Rev. St. U. S., which provides "that the right of way for the construction of highways over public lands not reserved for public use is hereby granted," is a general grant or dedication, without reservation or exception, of the right of way over the public lands for highway purposes; and the territorial laws, being now sections 1189, 1191, Comp. Laws, providing "that all section lines shall be and are hereby declared public highways as far as practicable," and "that the public highways along section lines, as declared in section 1189, shall be sixty-six feet wide, and shall be taken equally from each side of said lines," is an acceptance of the congressional grant, which became operative upon the date of its enactment.

2. The act of congress giving the right of way for the construction of highways over public lands, and the territorial law declaring all such lines, as far as practicable, to be public highways, and designating such highways to be 66 feet wide, are notice to all persons filing on public lands subsequent to the passage of these laws that they take them sub-

ject to the right of way for highway purposes, if such section lines are found to be practicable.

3.  Mere settlement on the public lands of the United States confers no rights upon the settler as against the government or its grantees. The settler acquires no vested interest in the land until he has entered the same at the proper land office, and obtained a certificate of entry. Until then the land continues subject to the absolute disposing power of congress.

(Syllabus by the court. Opinion filed March 19, 1891.)

Appeal from circuit court, Pennington county. Hon. JOHN W. NOWLIN, Judge.

Appeal to the circuit court of Pennington county from the decision of the board of county commissioners of that county, rejecting plaintiff's claim for damages for taking and appropriating his certain real property for public use. The issues were tried to a jury and a verdict was rendered for plaintiff and judgment thereupon entered. Defendant appeals. Reversed.

The facts are stated in the opinion.

*Charles W. Brown, States Att'y of Pennington County,* and *William Gardner* for appellant.

The act of congress § 2477 Rev. Stat. U. S., granting the right of way over public lands for highways is a present absolute grant, and the terms thereof are accepted by the provisions of the territorial law declaring all section lines to the extent of thirty-three feet on each side thereof to be public highways as far as practicable, §§ 1189, 1191 Comp. Laws. Railroad v. Gordon, 41 Mich. 420; Murray v. City of Butte, 14 Pac. 656; McRose v. Bottiger, 22 Pac. 393; Railroad v. Baldwin, 103 U. S. 476; Verdier v. Railroad, 15 S. C. 479; Sans v. Railroad, Id. 484; Cincinnati v. White, 6 Pet. 431; Morgan v. Railroad, 96, U. S. 716. User is only one of many ways in which a dedication may be accepted. It may be accepted by a formal act by some public agent properly authorized. Eureka v. Armstrong, 22 Pac. 928; 2 Dill. Mun. Corp. § 642; Ang. Highways § 157; Wash. Easements 246; *In re* Thirty-second St. 19 Wend. 130; Dummer v. Jersey City, 40 Am. Dec. 213; Church v. Hoboken, 97 Id. 697; Abbott v. Cottage City, 143 Mass. 521; State v. Trask, 27 Id. 566 note.

The title which the territory acquired upon its acceptance of the provisions of the act of congress was necessarily imperfect until the land accepted for highways had been surveyed, but when that was done, the section lines accepted for highways became susceptible of identification and the title of the territory attached to them and took effect as of the date of the territorial law, cutting off all intervening claims. Railroad v. Price County, 133 U. S. 496; M. K. & T. Railroad v. K. P. Railroad, 97 U. S. 491; Railroad v. United States, 92 U. S. 733; Schulenberg v. Harriman, 21 Wall 44; Railroad v. Majors, 2 Pac. 322; Railroad v. Randall, 13 N. W. 127.

The act of congress and the territorial law are notice to all persons filing on the public lands, subsequent to their passage, that they take the same subject to a right of way for highway purposes. Rider v. Railroad, 15 N. W. 371.

Settlement on the public lands of the United States, no matter how long continued, confers no rights as against the government and its grantees; the settler acquires no vested rights in the land until he has entered the same at the proper land office and obtained a certificate of entry. Campbell v. Wade, 132 U. S. 34; Hutchins v. Low, 15 Wall 82; Frisbie v. Whitney, 9 Wall 669; Doran v. Railroad, 24 Cal. 247; Railroad, v. Tevis, 41 Cal. 489. Patents for lands which have been previously granted, reserved from sale or appropriated, are void. Morton v. Nebraska, 21 Wall 660; Best v. Doe, 18 Wall 112; Stoddard v. Chambers, 2 How. 318.

*Chauncey L. Wood*, for respondent.

The grant contained in § 2477, Rev. Stat. U. S. is not in the nature of an absolute grant *in præsenti*, but is in the nature of a general offer which becomes operative as a grant only when its terms are complied with by such municipalities as the law clothes with the right to construct public highways. Railroad v. Sture, 20 N. W. 229; Railroad v. Gordon, 2 N. W. 229, §§ 1189, 1191, Comp. Laws, cannot be an acceptance of the grant, for the Territory of Dakota was not clothed with the authority to construct highways.

Respondent is not estopped to maintain this action by the

fact that after the location and establishment of the highway and before this action, he sold his land.  § 2780 Comp. Laws. Van Dusen v. Young, 29 Barb. 9; Robinson v. Wheeler, 25 N. Y. 252; Railroad v. Allen, 15 N. E. 45.

BENNETT, J.   This action was brought by appeal to the circuit court of Pennington county from the decision of the board of county commissioners of said county, rejecting plaintiff's claim for damages, filed with said board.   The complaint alleges that on the first day of April, 1885, the county of Pennington, by one John P. McElroy, a road supervisor of said county, without notice or other legal proceedings, took and appropriated the private property of the plaintiff for public use, to-wit, certain lands lying along the regularly surveyed section lines, for a public highway, and on account of the taking and appropriation of said lands the plaintiff is damaged in the sum of $400.   The complaint further alleges that at the time of said appropriation the plaintiff had not received a patent from the United States for the land so taken, but afterwards, on the 6th day of November, 1886, he did receive his patent, and on the 21st day of January, 1887, he duly asserted his claim for damages on account of such taking and appropriation of his property.   The defendant answered, denying all the allegations of the complaint; and for a further answer alleged (1) that plaintiff, prior to the filing of the complaint, had conveyed by warranty deed to one George Hunt all of the premises so alleged to have been taken, and that he did not, either in the warranty deed or otherwise, reserve or except to himself any claim or demand for damages by reason of said land being taken or used for a public highway.   (2) That the tracts of land in question were first surveyed by the United States in July and August, 1879, and the official plat filed in the proper land office of the United States on the 18th day of February, 1880, and prior to that time they were unsurveyed public lands of the United States.   That the plaintiff first settled on these lands on the 28th day of January, 1879, and on the 16th day of June, 1883, made his final proof to establish his right thereto under the pre-emption laws of the United States,

and received his final receipt. That the private property of plaintiff, alleged to have been taken or appropriated by the defendant for public highways, consisted of certain strips of land thirty-three feet wide, situated on each side of section lines, lying and being along and between the said sections, which said strips and section lines are practicable public highways or roads, and are now, and at all times since the 1st day of April, 1885, have been, used and traveled by the general public. On the 29th day of March, 1890, the issues were tried by a jury, verdict rendered for the plaintiff, damages assessed at $275, and judgment entered. A motion for a new trial was made and overruled, an appeal was perfected, and a large number of errors were duly assigned. Upon the trial it was stipulated and agreed that the allegations of the complaint and the facts set forth in the affirmative defenses of the defendant were true, except the allegation of damages set forth in the complaint. The evidence introduced was upon the question of damages only.

The defendant and appellant relies upon but two propositions for a reversal: (1) That the complaint, taken in connection with the allegations of the affirmative defenses, does not state facts sufficient to constitute a cause of action; (2) that, if the facts proved constitute a cause of action on the part of plaintiff, the errors of law committed by the court below entitle appellant to a new trial. Section 2477, Rev. St. U. S., enacted in 1866, and in force at the time of the alleged appropriation, provides "that the right of way for the construction of highways over public lands not reserved for public use is hereby granted." Sections 1189, 1191, Comp. Laws, enacted prior to February 17, 1877, provide "that all section lines shall be and are hereby declared public highways as far as practicable." "The public highways along section lines, as declared by Section 1189, shall be sixty-six feet wide, and shall be taken equally from each side of said lines, unless changed as provided in the preceding section. "The contention of the appellant is that the act of congress above quoted freely grants the right of way over the public lands for highway purposes; that the terms thereof

may be accepted by the public or by any state, territory or municipality authorized to legislate for the public in the matter of highways; that the congressional act is full and sufficient authority for the passage of the territorial law; and that the two laws constituted, as to lands along the section lines, an accepted public grant or dedication of the same for highway purposes prior in time to the acquisition by the plaintiff of any vested interest in such land.

The respondent contends that the grant contained in said Section 2477, Rev. St. U. S., is not an absolute grant, but is in the nature of a general offer by the general government, which becomes operative as a grant only when its terms are complied with by such municipalities as the law clothes with the right to construct public highways. The territorial enactments, as set forth in Sections 1189, 1191, Comp. Laws, was not an acceptance of the grant, for the territory of Dakota was not clothed with authority to construct highways. These contentions present two questions for determination: (1) Was the congressional act a present, absolute grant or dedication, without reservation or exception, freely granting the right of way over the public lands for the construction of highways? (2) Were the terms of the grant accepted by the provision of the territorial law declaring all section lines to the extent of thirty-three feet on each side thereof to be public highways, as far as practicable? The language of Section 2477, Rev. St. U. S., indicates a grant *in præsenti*. Its words: "The right of way for the construction of highways over public lands not reserved for public use is hereby granted,"—import an immediate transfer of interest, not a promise of a transfer in the future. As to the intent of congress in this enactment granting the right of way to cross the public lands there can be no reasonable doubt. The object of the grant was to enable the citizens and residents of the states and territories where public lands belonging to the United States were situated to build and construct such highways across the public domain as the exigencies of their localities might require, without making themselves liable as tresspassers. And when the location of the highway and roads

was made by competent authority or by public use, the dedication took effect by relation as of the date of the act; the act having the same operation upon the lines of the road as if specifically described in it. Justice FIELD, in the case of Missouri, etc., Ry. Co. v. Kansas, etc., Ry. Co., 97 U. S. 497, says: "It is always to be borne in mind in construing a congressional grant that the act by which it is made is a law as well as a conveyance, and that such effect must be given to it as will carry out the intent of congress. That intent should not be defeated by applying to the grant the rules of the common law, which are properly applicable only to transfers between private parties. To the validity of such transfers it may be admitted that there must exist a present power of identification of the land; that when no such power exists, instruments, with words of present grant, are operative, if at all, only as contracts to convey. But the rules of common law must yield in this, as in all other cases, to the legislative will." The grants by the United States of land to aid in the construction of railroads are in many respects analogous to this enactment. While in these grants the fee to the land was intended to be transferred to the railroad companies by their grants, and the act under consideration is only a dedication or giving a right of way, yet the principles governing the construction of the words "is hereby granted" are the same.

The courts of the United States have made many adjudications, holding, when these words are used in an act of congress transferring a right or a fee, that the grant takes effect as of the date of the act. In the case of Railroad Co. v. U. S., 92 U. S. 733, the language of the act which was being construed by the court was: "There be and is hereby granted to the State of Kansas." In reference to it the court said: "It creates an immediate interest, and does not indicate a purpose to give in the future. 'There be and is hereby granted' are words of absolute donation, and import a grant *in præsenti*. This court has held that they can have no other meaning, and the land department, on this interpretation of them, has administered every previous grant." The case of Railroad Co. v. Baldwin,

103 U. S. 428, was an action by Baldwin to recover of the St. Jo & Denver City Railroad Company damages for entering upon his lands in Nebraska, and appropriating, in the construction of its road, a strip 200 feet in width and 200 rods in length. The company claimed a right of way over the land of that width under an act of congress of July 23, 1866, which, among other provisions, provided "that the right of way through the public lands be, and the same is hereby granted to the said St. Jo. & Denver City R. R. Co.  *  *  *  for the construction of a railroad  *  *  *  to the extent of one hundred feet in width on each side of said road where it may pass." When the grant was made by congress the land claimed by Baldwin was vacant and unoccupied land of the United States. But the line of the road over it was not definitely located until October, 1871. Baldwin acquired whatever right he had to the land in October, 1869. The company's contention was that Baldwin took the land subject to its right of way, but he contended that the grant of the right of way took effect only from the date at which the company filed its maps, designating the route, with the secretary of the interior. With these contentions the case came before the supreme court of the United States. In deciding the case Justice FIELD says: "The language of the act here, and of nearly all congressional acts granting lands, is in terms of a grant *in præsenti*. The act is a present grant. 'There is hereby granted' are the words used, and they import an immediate transfer of interest, so that, when a route is definitely fixed, the title attached from the date of the act. The grant of the right of way by the sixth section contains no reservations or exceptions. It is a present, absolute grant, subject to no conditions except those necessarily implied,—such as that the road shall be constructed and used for the purposes designed. Nor is there anything in the policy of the government with respect to the public lands which would call for any qualification of the terms. Those lands would not be the less valuable for settlement by a road running through them. On the contrary, their value would be greatly enhanced thereby.  *  *  *  We see no reason, therefore, for not giving to the words of present grant,

with respect to the right of way, the same construction which we should be compelled to give, according to our repeated decisions, to the grant of lands, had no limitations been expressed. We are of opinion, therefore, that all persons acquiring any portion of the public lands after the passage of the act in question took the same subject to the right of way conferred by it for the proposed road." The same conclusions have been reached and followed by the land department of the United States. See 1 Lester, Land Laws, p. 549, No. 578; Hall v. State, 2 Copp, Pub. Land Laws, 1048; Cushing v. State, 4 Dec. Dep. Int. 415; 9 Op. Atty. Gen. 254; Wright v. Rosebury, 121 U. S. 503, 7 Sup. Ct. Rep. 985. The same views have been expressed by the supreme courts of several of the states. See Fletcher v. Pool, 20 Ark. 100; Ringo v. Rotan, 29 Ark. 56; Owen v. Jackson, 9 Cal. 322; Kernan v. Griffith, 27 Cal. 87; Reclamation Co. v. Cook, 61 Cal. 341; Allison v. Halfacre, 11 Iowa, 450; Campbell v. Wortman, 58 Mo. 258; Gaston v. Stott, 5 Or. 48; Keller v. Brickey, 78 Ill. 133. The foregoing were cases of grants to railroad companies, but as remarked by FIELD, J., in Missouri, etc., Ry Co. v. Kansas, etc., Ry. Co., *supra*, the principles therein enunciated are applicable to all similar congressional grants. Nor is there anything in the policy of the federal government with respect to the public lands which would call for any qualification of the terms of the grant. The public lands would not be made any less valuable for settlement by a law of congress authorizing the locating of highways on the public domain; but, on the contrary, their value would be enhanced. Such roads facilitate the settlement of the country, and benefit neighborhoods, and in both particulars further the general policy of the government.

But we are met by the contention of respondent that the act of congress dedicating the right of way across the public land is not an absolute grant, but is in the nature of a general order to the public, which takes effect and only becomes operative as a grant when its terms are accepted. This proposition, without doubt, rests on the elementary principle that a grant, like any other contract, must have two parties,—a

grantor and a grantee,—and an offer not accepted constitutes no contract. The parties to a dedication are the owners and the public; and it must be remembered that the public is an ever·existing grantee, capable of taking dedications for public uses, and its interests are a sufficient consideration to support them. It may be unnecessary to cite authorities upon this generally conceded rule, but we will take the liberty of doing so, even at the risk of being prolix: Warren v. Town of Jacksonville, 15 Ill. 240; Cincinnati v. White, 6 Pet. 431; Maywood Co. v. Village of Maywood, 118. Ill. 61, 6 N. E. Rep. 866. It may, however, be admitted that the right acquired by the territory or the public was necessarily imperfect until the land accepted for highways was surveyed, and capable of identification; but when the land was surveyed, and the various section lines were designated to be public highways as far a practicable, the right of the territory attached to them for that purpose, and took effect as of the date of the territorial law. Railroad Co. v. Price Co., 133 U. S. 496, 10 Sup. Ct. Rep. 341. The act of congress giving the right of way for the construction of highways over public lands, and the territorial law declaring all such lines, as far as practicable, to be public highways, and designating such highways to be 66 feet wide, are notice to all persons filing on public lands subsequent to the passage of these laws that they take them subject to the right of way for highway purposes, if such section lines are found to be practicable for that purpose. In the case before us we are not called upon to construe the limitation, exception, or effect of the words "if practicable," to be found in the territorial enactment, because the record shows that upon the trial of the action it was expressly stipulated as a part of the facts upon which the case should be heard that this particular strip of land was, on or about the 21st day of April, 1885, duly opened by the proper authority as a public highway, and that ever since that time it has been so used and traveled upon as a public highway by the general public; thus establishing by express stipulation of the parties that it is and was practicable as such highway. The respondent further contends that the territorial legislative act

cannot be considered as an acceptance of the congressional grant, because the Territory of Dakota was not clothed with authority to construct highways, and that a legislative enactment cannot amount to the construction of a road or highway. The congressional act does not imply in its grant that the grantee shall be constructor of the highway. It grants the right of way only. It does not say how or by whom they may be constructed. The right to construct highways over the public land is what is given and granted, and that right is not restricted by the manner or mode of construction. The territorial law located the highways upon all public lands upon the section lines, and this public grant or dedication was so accepted, and became valid as against the government, and therefore valid as against its subsequent grantee, who must take the land subject to this right. The title to the land is not taken away. It is merely the right to pass over and use it for roads and highways when found practicable. If not so found by competent authority, the grantee of the government holds the lands divested of this right.

It is further contended that when private property is taken for public use just compensation must be made to the owner. This proposition is undoubtedly true. But at the time of the location of the highway in question, was the land over which it was located the property of the respondent? We think not. The act of congress granting the right of way over public lands for highways was passed in 1866. The Code of 1877, containing the section line statute, was passed at the session of the legislature beginning January 9, 1877, and closing February 17, 1877. The Indian title to the Black Hills country, in which the land in question is situated, was relinquished to the United States on February 28, 1877. The lands were first surveyed in July or August, 1879, and the official plats were filed in the United States land office at Deadwood, Dak., February 18, 1880. The respondents settled on said tracts of land on the 18th day of January, 1879, and made final proof of his right thereto on June 16, 1883, under the pre-emption laws of the United States. These facts in relation to survey, settlement, and final

proof were stipulated as being true; and for the purposes of this case we take them as being such without an examination of records or other authorities. The question rises, when did the respondent acquire an absolute title to the land in question, previous to its being declared to be a highway? His settlement was made January 18, 1879. Settlement on the public lands of the United States confers no rights as against the government or its grantees. The settler acquires no vested interest in the land until he has entered the same at the proper land office and obtained a certificate of entry. Until then the land continues subject to the absolute disposing power of congress. In the case of Campbell v. Wade, 132 U. S. 35, 10 Sup. Ct. Rep. 9, one of the latest decided by the supreme court of the United States involving this principle, Justice FIELD says; "It has always been held that occupation and improvement of the tracts desired, with a view to pre-emption, though absolutely essential for that purpose, do not confer upon the settler any right in the land occupied, as against the United States, which could impair in any respect the power of congress to withdraw the land from sale for the uses of the government, or to dispose of the same to other parties." This subject was fully considered in Frisbie v. Whitney, 9 Wall. 187, where the same doctrine was announced. It was subsequently affirmed in the Yosemite Valley case, 15 Wall. 77, where the court said that, until all the preliminary steps prescribed by law for the acquisition of the property were complied with, the settler did not obtain any title against the United States. and that among these were entry of the land at the appropriate land office, and payment of its price." "Until such entry and payment," the court said, "the acts of congress give to the settler only a privilege of pre emption in case the lands are offered for sale in the usual manner; that is, the privilege to purchase them in that event in preference to others. The United States by these acts enter into no contract with the settler, and incur no obligation to any one that the land occupied by him shall ever be put up for sale. They simply declare that in case any of these lands are thrown open for sale, the privilege to purchase them in limited quantities, at fixed prices,

shall be first given to parties who have settled upon and im-
proved them." Neither the stipulation of facts nor the evi-
dence introduced at the trial show when respondent entered
the land in question, or filed his declaratory statement. It is
presumed, however, the entry must have been made within
thirty months before the final proof, as Section 2267, Rev. St
U. S., requires that "all claimants of pre-emption rights *
*  *  shall, when no shorter time is prescribed by law, make
the proper proof and payment for the lands claimed within
thirty months" after filing the declaratory statement. The
final proof was made June 16, 1883. Thirty months previous
would be December 16, 1880, which date was the earliest period
of time, under the decisions above cited, that the respondent
had any substantial claims to the land; but not until he had
made final proof was any title vested in him. The lands be-
came a part of the public domain of the United States February
28, 1877. They were surveyed, and the official plat was filed
in the proper United States land office, in February, 1880.
This survey designated the proper section lines. The law of
congress giving the right of way for highway purposes over
these lands was in force, and operated on them. The territorial
law of 1877 of Dakota, making all section lines highways, dedi-
cated 33 feet on each side of these lines to the public for that
purpose. Respondent's entry and proof being subsequent to
these, whatever vested right he afterwards acquired must be
subject to these limitations. It is unnecessary to consider the
question raised by the appellant by reason of the premises hav-
ing been conveyed to one George Hunt by the respondent, or
the errors of the court below, if there were any, as to the ad-
mission or rejection of evidence in relation to special damages,
as the views above expressed are decisive of the case, as far as
the right of recovery exists on the part of the respondent; for
the allegations stated in the complaint, taken in connection
with the stipulation of facts, do not show that the respondent
is entitled to recover. The cause is reversed and remanded.
All the judges concurring.