## LAWRENCE et al. v. EWERT et al.

Under Rev. St. U. S. § 2477 [U. S. Comp. St. 1901, p. 1567], granting the right of way for highways over public lands not reserved for public use, and Act Jan. 12, 1871 (Laws 1870-71, p. 519, c. 33), declaring all section lines in the territory public highways as far as practicable, carried into Rev. Codes 1877, p. 125, c. 29, § 1 (Rev. Pol. Code, § 1594), with additional sections (sections 2 and 3 [sections 1595, 1596], giving county commissioners power to change or vacate the highways in their counties, and providing that the highways on section lines shall be 66 feet wide and shall be taken from each side of the lines, the obstruction of section lines practicable for highways is unlawful, notwithstanding noncompliance with Rev. Pol. Code, § 1623, first enacted in 1868, giving county commissioners power to establish, change, and vacate highways on section lines without viewers or a surveyor, the proceedings in other respects to be governed by the provisions relating to other highways, and section 1611 prescribing the procedure in the case of other highways.

Where defendants built fences across highways at 15 or more points, replaced them when removed by the road supervisors, and threatened to continue the obstructions, injunction was a proper remedy, though defendants were liable to criminal prosecutions.

Haney, J., dissenting.

(Opinion filed, January 7, 1908.)

Appeal from Circuit Court, Sully County. Hon. LORING E. GAFFY, Judge.

Action by Henry J. Lawrence and another against Adolph Ewert and another. From a judgment for plaintiffs and an order denying a new trial, defendants appeal. Affirmed.

*John Sutherland* and *D. M. March,* for appellants. *John Hughes* and *A. C. Byrum,* for respondents.

CORSON, J. This is an action instituted by the plaintiffs the defendants to enjoin them from fencing up certain section lines in Sully county. The case was tried by the court without a jury, and, findings and judgment being in favor of the plaintiffs, the defendants have appealed. A number of errors are assigned, but the two that it will be necessary to consider and discuss are (1) that the board of county commissioners had failed to legally establish the highways on the section lines obstructed by the defendants; and (2) that the court was not authorized to enjoin the defendants from obstructing the section lines in this form of action.

It appears from the findings of the court that in April, 1890,

the board of county commissioners of Sully county declared that
all section lines in Sully county should be public highways, and
the road overseers of that county were instructed to give notice
to all persons obstructing section lines to remove such obstructions.
The proceedings were taken by the board upon the petition of
about 170 residents of Sully county after a committee of the board
had determined and reported that highways upon said section
lines were practicable.  The road supervisor for the section of the
county in which the section lines were obstructed by the defend-
ants duly notified them to remove their fences and obstructions
from such section lines, but they refused to do so, claiming that
highways upon said section lines had not been legally established,
and they had the lawful right to extend their fences across the
same.  Counsel for appellants contend that highways on section
lines can only be established as provided by section 1623 of the
Revised Political Code, which provides as follows: "The board of
county commissioners has power to establish, change and vacate
highways upon section and quarted section lines when the initial
and terminal points and the course of highway can be
clearly described, without the appointment of viewers or
the service of a surveyor; •but in all other respects the pro-
ceedings therein shall be governed by the provisions of the pre-
ceding article relating to the establishment, vacation and change of
highways not on such lines."  The proceedings to establish a high-
way not on any section or quarter section line is provided in sec-
tion 1611, which reads as follows: "Whenever twelve freeholders
of the county, six of whom shall reside in the immediate neigh-
borhood, shall petition the board of county commissioners for the
location, vacation or change of any public highway other than
on section lines, such board, if they shall be satisfied that notice
of such application has been given by publication three weeks suc-
cessively in a newspaper published in the county, or by posting
up notices in three of the most public places in the neighborhood
of such highway or change at least twenty days before the meet-
ing of the board at which such petition is to be presented, shall
appoint three persons to view such highway."  The following sec-
tions prescribe the manner of proceeding to be taken in locating

and opening such highways, and they further contend that the highways were not established as provided by these sections. It appears from the record in this case that the proceedings prescribed by section 1611 were not complied with, as no petition was pre-sented by twelve freeholders, six of whom were shown to reside in the immediate neighborhood of the proposed highway, and no notice was given of the contemplated proceedings of the board as provided in section 1611; and hence said board had no jurisdiction to moke the order establishing said highways. But, in the view we take of the case, the proceedings provided in sections 1611 and 1623 were not required to be taken, in order to establish highways on the section lines in that county.

In 1866 Congress declared: "The right of way for the construction of highways over public lands not reserved for public use, is hereby granted." Rev. St. U. S. § 2477 [U. S. Comp. St. 1901, p. 1567]. Subsequent to this grant by the United States in 1868 the territorial Legislature passed an act containing sections 1611 and 1623 above quoted; and by an act approved January 12, 1871 (Laws 1870-71, p. 519, c. 33), declared "that hereafter all section lines in this territory shall be and are hereby declared public highways as far as practicable." This was carried into the Revision of 1877 (Rev. Codes 1877, p. 125, c. 29), and there was added thereto the two following sections: Section 2: "The board of county commissioners of each county shall have power to vacate or change the highways within their respective counties located by the legislative assembly as herein provided." Section 3: "The public highways along section lines as declared by the first section of this chapter shall be 66 feet wide and shall be taken from each side of said lines unless changed as provided in the preceding section." It will be observed in the act of 1871 that it is declared "all section lines shall be, and are hereby declared, public highways as far as practicable and it will be further observed by section (3) the public highways along section lines as declared by the first section shall be sixty-six feet wide and shall be taken equally from each side of said lines." Section 1623, in substance the present Revised Code, was enacted by the territorial Legislature and approved December 25, 1868 (Laws 1868-69, p. 199,

c. 9), about two years prior to the enactment of the law declaring all section lines to be public highways; and, in the view we take of the case, that clause of section 1623 "establishing" highways was in effect repealed by implication so far as it provided for establishing highways on section lines, and remains in force, and is operative as to the power of a board of county commissioners to "change and vacate" highways upon section lines. Of course, the revisers were required to incorporate all sections of the various legislative enactments not specifically repealed into the Codes, as it was not competent for them to determine what parts of sections were or were not repealed by implication. It will be observed that by the act of 1871 the lawmaking power has clearly expressed its intention in language susceptible of but one construction. The expression, "all section lines shall be and are hereby declared public highways as far as practicable," was evidently intended to make every section line in the then territory and now state a highway over which the people of the state would have an easement and right of way subject to the qualifications therein contained for the purpose of passing from one section of the state to another. Declaring section lines "public highways" means that they are roads which every citizen has a right to use. Webster in his International Dictionary defines a highway as follows: "A road or way open to the use of the public; a main road or thoroughfare." And Bouvier defines a highway as follows: "A passage, road, or street which every citizen has a right to use." See authorities cited by Mr. Bouvier; 15 A. &. E. Ency. of Law, 350-351-352-353. It will thus be seen that the term, "public highway," means more than a right of ways over which a public highway may be established, and that it is a passage or road which "every citizen has a right to use." The Legislature evidently intended that the term "highway" as used in the law of 1871 should have the ordinary meaning, and that section lines throughout the territory as far as practicable, and not interfering with the then existing highways in the settled portions of the territory, should be open to the use of the public, and no action of boards of county commissioners or supervisors of townships is required to establish or open such highways as are practicable on section lines. The

highways so established by the legislative authorities cannot lawfuly be instructed by private citizens until changed or vacated in the manner provided by law. It follows, therefore, that the "highways" obstructed by the defendant by the building of fences across the same was in violation of law.

The construction of the congressional grant and the act of 1871 was fully considered by this court in Wells v. Pennington County, 2 S. D. 1, 48 N. W. 305, in which this court held: "Section 2477, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1567], which provides, "that the right of way for the construction of highways over public lands not reserved for public use is hereby granted,' is a general grant or dedication, without reservation or exception, of the right of way over public lands for highway purposes; and the territorial laws, being now sections 1189, 1191, Comp. Laws 1887, providing "that all section lines shall be and are hereby declared public highways as far as practicable,' and 'that the public highways along section lines, as declared in section 1189, shall be sixty-six feet wide, and shall be taken equally from each side of said lines.' is an acceptance of the congressional grant, which became operative upon the date of its enactment. * * * The act of Congress giving the right of way for the construction of highways over public lands, and the territorial law declaring all section lines, as far as practicable, to be public highways, and designating such highways to be 66 feet wide, are notice to all persons filing on public lands subsequent to the passage of these laws that they take them subject to the right of way for highway purposes, if such section lines are found to be practicable." It is true in that case the court did not directly hold that all section lines constituted highways which could not be obstructed by private citizens, as the case did not require a decision of that question; but it will be noticed that the court goes very far in that direction by holding that the act was notice to all persons filing upon public lands subsequent to the passage of that law that they took them subject to the right of way for highway purposes, if such section lines are found to be practicable. The contention of counsel for appellants in effect requires this court to interlope into section 1594

a further proviso, in substance that said highways shall be located in the manner herein provided, or hereafter provided by law. Such interpolation is not within the power of this court. While a court may in a proper case add a word to a section of the statute in order to give it effect (Jones v. Fidelity Trust Co., 7 S. D. 123, 63 N. W. 553; Lawrence County v. Mead County, 6 S. D. 528, 62 N. W. 131), so great an addition as would be required to this section in order to make it read as contended for by the counsel for the appellants would be clearly beyond the authority of this court. Had the Legislature contemplated any such proviso as that contended for, it would have been inserted in the section at the time of the enactment of the law. The act of 1871 containing the one provision making all section lines highways has remained upon the statute book of this state for nearly 40 years without amendment or material change, and for this court now to insert, by judicial construction into the section, limitations and qualifications not found therein or made by amendment thereto would, it seems to us, violate the spirit and intention of the Legislature, as well as its language, and give to the act a meaning entirely different from that intended by the Legislature, and by such construction practically prevent the people from enjoying the benefits of one of the most important and beneficial acts that was ever enacted by our territorial Legislature. In giving to the act the construction contended for by appellants, it would have the effect of permitting parties to close up the highways on the various section lines of the state that have not been established and opened as prescribed by sections 1611 and 1623, and practically restore the highways of the state to the condition in which they existed at the time the law of 1871 was enacted.

Appellants attach much importance to the clause, "as far as practicable"; but i is quite evedent that the only purpose of that qualification was to relieve the counties from the expenditure of money in the opening of highways not practicable without such expenditure, and do not limit or qualify the general language of the section, providing that "all section lines shall be and are hereby declared public highways," as applicable to section lines which could be used as such highways without any additional ex-

penditure of money or labor thereon. As we have seen in the case at bar, the county commissioners had examined the section lines in Sully county, and had determined that they were practicable as such highways. In the view we have taken of the case, we are clearly of the opinion that all section lines in Sully county were highways without any special action or order by the board of county commissioners, and that the defendants were not authorized to close up or obstruct any such section line highways.

This brings us to the second contention of counsel for appellants, that an injunction was not the proper remedy in this action; but we cannot agree with counsel in this contention. It appears from the evidence, and as found by the court, that the road supervisor having in charge the highways in that section of the county had removed the obstructions and that the same had been replaced by the defendants or under their direction, and that they threatened to continue such obstructions in the future. It further appears from the findings of the court, fully sustained by the evidence, that the defendants had closed up by fences some 15 or moie of these section line highways, and the road supervisor could not be reasonably required to proceed day after day to remove these obstructions, which could easily be replaced by the defendants during the night-time, and by means of parties who could not be known or identified by such road supervisor while replacing such obstructions. To require, therefore, that the road supervisor should proceed to arrest such parties under the criminal law, when in most cases, if not all, it would be difficult, if not impossible, for him to ascertain who had placed the fences or obstructions across the highways, would be placing upon the road supervisor too great, and in many cases useless, a burden. It is certainly proper, therefore, for the county to prevent these obstructions being continued in such highways by injunctions. It is quite clear that by the complaint in this action and the evidence and findings of the court that the plaintiff was entitled to the relief demanded, viz., that such obstructions to public highways should be removed, and that the continuance of such obstructions would produce injury to the plaintiff. High on Injunctions, § 596. Certainly in the case at bar the closing up or obstructing of

these highways was prejudicial to the public, and an injunction seems to be a proper remedy to prevent the maintaining of such obstructions across the highways.

We are of the opinion, therefore, that the court was right in concluding from the facts found that the plaintiff was entitled to an injunction and in entering judgment in his favor.

The judgment of the circuit court and order denying a new trial are affirmed.

FULLER, P. J.   While, in my opinion, the authoritative determination of what particular points, if any, upon these section lines are impracticable is essential to their final establishment and confirmation as public highways, their location as such by the Legislature, without reference to existing conditions, renders their obstruction unlawful.

The remedy by injunction being entirely proper, I concur in the conclusion reached by Judge Corson.

HANEY, J. (dissenting).   This action was instituted to restrain the defendants from obstructing certain alleged highways in Sully county.  The decision below was in favor of the plaintiffs, judgment was entered perpetually enjoining the defendants from maintaining fences or other obstructions across the public highways upon certain described section lines, and they appealed from the judgment and an order denying their application for a new trial.

It is alleged in the complaint, and found by the court, in substance, that the board of county commissioners at a regular meeting duly and regularly declared the section lines in question practicable and necessary for highway purposes, and declared the same to be highways.  It appears that the commissioners, acting on a petition purporting to have been signed by "172 residents and voters" praying for the opening of public highways on all section lines in the county, a petition purporting to have been signed by "111 residents and voters" protesting against the opening of such section lines as highways, and the reports of two committees composed of members of the board to whom the matter was referred, adopted the following resolution:  "That all section lines reported as practicable for use as public highways by each commit-

tee be and are hereby established as public highways." Defendants contend that the board was without jurisdiction to make this order, while plaintiffs contend that the highways existed by operation of law, action by the commissioners being unnecessary. Thus is presented an important question not heretofore determined by this court, the solution of which requires the construction of the following statutory provisions relating to highways: "All section lines shall be and are hereby declared public highways as far as practicable; provided, that nothing in this article shall be so construed as to interfere with existing highways in the settled portions of the state." Rev. Pol. Code, § 1594. "The board of county commissioners of each county shall have power to vacate or change the highways within their respective counties located by the legislative assembly as hereinafter provided." Id. § 1595. "The board of county commissioners has power to establish, change and vacate highways upon section and quarter section lines when the initial and terminal points and the course of the highway can be clearly described, without the appointment of viewers or the services of a surveyor; but in all other respects the proceedings therein shall be governed by the provisions of the preceding article relating to the establishment, vacation and change of highways not on such lines." Id. § 1623.

In 1866 Congress declared: "The right of way for the construction of highways over public lands, not reserved for public use, is hereby granted." Rev. St. U. S. § 2477 [U. S. Comp. St. 1901, p. 1567]. During the first 10 sessions of the territorial Legislature numerous highways, termed "territorial roads," were located or established by as many special acts of that body. At its first session the territorial Legislature conferred power upon county commissioners to locate county roads. Laws 1862, p. 483, c. 71. In 1867 chapter 71. p. 438, Laws 1862, was repealed by an act which gave the commissioners power to lay out and open roads through improved fields in organized counties. Laws 1866-67, p. 1, c. 1. In 1868 an act was passed providing for the opening, vacating, and changing, by county commissioners, of highways running into more than one county, which also contained "general provisions concerning highways." Laws 1867-68, p. 132,

c. 13. An act supplementary to this was passed in 1868, which gave the board of county commissioners power to locate and establish highways "on a section or quarter line, when the initial and terminating points can be clearly described, without the appointing of viewers or services of a surveyor, upon a petition of twelve free-holders or bona fide claimants of the county, six of whom shall reside in the immediate neighborhood of the highways proposed to be located." Laws 1868-69, p. 199, c. 9. At the following session it was enacted: "That hereafter all section lines in this territory shall be and are hereby declared public highways as far as practicable; provided, that nothing in this act shall be so construed as to interfere with existing highways in the settled portions of the territory." Laws 1870-71, p. 519, c. 33. In 1877 these and other acts relating to highways were carried into the Revised Political Code, Rev. Pol. Code 1877, p. 141, c. 29. Since that time the provisions applicable to the case at bar have continued in force without substantial change. Rev. Pol. Code, §§ 1594-1642. Notwithstanding the act declaring all section lines to be 'public highways as far as practicable" was passed after the one authorizing county commissioners "to establish, change and vacate highways upon section and quarter section lines," both provisions having been re-enacted in the Revisions of 1877 and 1903, they must, for the purposes of construction, be deemed to have been passed on the same day and as parts of the same statute. Rev. Codes 1877, p. 940, § 16; Laws 1903, p. 270, c. 205, § 2; Roberts v. Parker, 14 S. D. 323, 85 N. W. 591; Coler v. Sterling, 15 S. D. 415, 89 N. W. 1022. "In the construction of a statute every part of it must be viewed in connection with the whole so as to make all its parts harmonize, if practicable, and give a sensible and intelligent effect to each. It is not to be presumed that the Legislature intended that any part of an enactment should be without meaning." Quebec Bank v. Carroll, 1 S. D. 1, 44 N. W. 723. If, as contended by the plaintiffs, it was intended that all section lines should be public highways, without any action on the part of local authorities, the Legislature should not have inserted the qualifying clause "as far as practicable"; nor should it have given the commissioners power to establish highways upon section lines.

How and by whom shall the question of practicability be determined? Why should commissioners have power to establish highways where they already exist? Manifestly, if effect is to be given all the terms of the statute, the clause declaring all section lines to be highways, and the word "establish," so far as it relates to section line highways, must each receive a restricted meaning. To establish may mean "to institute; to create and regulate"; or it may mean "to secure public recognition in favor of, to prove and cause to be accepted as true." Webster Int. Dict. So it does no violence to the language of the statute to hold that action by the commissioners may be required to determine the practicability and to secure public recognition of section lines as highways. Undoubtedly the public is entitled to appropriate 33 feet of land on each side of all section lines for highway purposes, without compensation to owners of land, the title to which was acquired from the general government subsequently to the congressional grant of 1866. Riverside Twp. v. Newton, 11 S. D. 120, 75 N. W. 899; Wells v. Pennington County, 2 S. D. 1, 48 N. W. 305. And it may be that the mere use of any section line as a public highway would be sufficient to complete its establishment as such. But it seems to me there is no escape from the conclusion that section lines are not established highways in the absence of any action on the part of the public to secure recognition of its rights. In the case at bar no question of usage arises, and it will be assumed that the alleged highways were all in territory not organized into civil townships. One cannot obstruct highways which do not exist. The burden was on the plaintiffs to prove the existence of lawfully established highways. Whether they succeeded depends on the effect to be given the action of the commissioners. Their proceedings were governed by the provisions of the articles relating to highways not on section lines, except as to the appointment of viewers and the services of a surveyor. Rev. Pol. Code, § 1623. That article requires: (1) A petition to the board of county commissioners, signed by not less than "12 freeholders of the county, six of whom shall reside in the immediate neighborhood" of the highway sought to be established; and (2) notice of such petition by publication for three successive weeks in a newspaper pub-

lished in the county, or by posting in three of the most public places in the neighborhood of the proposed highway, at least 20 days before the meeting of the board at which the petition is presented. Id. § 1611. In resisting a collateral attack, of course, the plaintiffs were only required to establish such facts as were essential to the jurisdiction of the board, namely, the presentation of a sufficient petition and the giving of the required notice. The law does not require that the petition shall show on its face that it is signed by 12 freeholders of the county, 6 of whom reside in the immediate neighborhood of the proposed highway, though it should do so; but it does require the existence of those facts before the board is authorized to act, and its records should disclose a finding to that effect. In this case the recitals of the record correspond with the recitals of the petition, and it is doubtful whether such recitals do not negative any presumption in favor of the validity of the proceedings arising from the mere granting of the petition. On that question I express no opinion. If, however, my construction of the statute be correct, plaintiffs failed to establish the jurisdiction of the board by failing so far as the record on this appeal discloses, to prove the giving of any notice, whatever, and, the board being without jurisdiction, its order was a nullity. Meek v. Meade County, 12 S. D. 162, 80 N. W. 182; Beatty v. Beethe, 23 Neb. 210, 36 N. W. 494; Hughes v. Milligan, 42 Kan. 396, 22 Pac. 313.

The decision of the circuit court not being sustained by the evidence in this essential particular, I think the judgment and order appealed from should be reversed.