STATE of South Dakota, Plaintiff
and Appellee,

v.

Leo C. PETERS, Defendant
and Appellant.

No. 13765.

Supreme Court of South Dakota.

Argued Feb. 14, 1983.

Decided April 13, 1983.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen. and Thomas E. Blue, Legal Intern, Pierre, on brief.

Thomas E. Klinkel of Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel, Aberdeen, for defendant and appellant.

FOSHEIM, Chief Justice.

Appellant Leo C. Peters was charged with trespassing on private land, in violation of SDCL 41–9–1,[1] and hunting within 660 feet of livestock, in violation of SDCL 41–9–1.1.[2] In a trial to the court he was

---

1. SDCL 41–9–1 reads: Except as otherwise provided in § 41–9–2, no person shall fish, hunt or trap upon any private land not his own or in his possession without permission from the owner or lessee of such land.

2. SDCL 41–9–1.1 reads: Except for controlled access facilities as defined in § 31–8–1 and interstate highways, unimproved section lines not commonly used as public rights-of-way and never altered from their natural state in any

convicted of the former and acquitted of the latter. We reverse the conviction.

The only issue before us is whether appellant was hunting on private land without permission in violation of SDCL 41–9–1. He contends he was not hunting on private land, but rather on a section line right-of-way as permitted generally by SDCL 41–9–1.1. Appellee concedes Mr. Peters was hunting within the 66 foot section line, but contends it was an "unimproved" section line and thus excepted from the general rule.

The pertinent part of SDCL 41–9–1.1 reads:

Except for ... unimproved section lines not commonly used as public rights-of-way and never altered from their natural state in any way for the purpose of facilitating vehicular passage, ... § 41–9–1 shall not apply to ... hunting on highways or other public rights-of-way within this state.

The charges arose out of events that occurred in western Sully County, near the impoundments of the Missouri River. This is a prime water fowl hunting area, which is controlled primarily by private hunting clubs and commercial goose hunting operators.

The section line in question is between Sections 13 and 24, Grandview Township in Sully County. Mr. Vernon Garrett owns all of Section 13 (it is unclear whether he owns Section 24) on which he had a commercial goose hunting operation in 1981. Mr. Lynn Hawkins ran this operation. It was open for business for approximately two months during the hunting season with an average of seven customers per day. About 434 sportsmen hunted in the Garrett pits during the 1981 season. The hunters would generally meet Mr. Hawkins at the west end of the section line between Sections 13 and 24

and travel east along that section line to the goose pits on Section 13. On the morning of November 25, 1981, Mr. Hawkins traveled the section line to the goose pits with two vehicles carrying hunters. Appellant later walked down the section from the west and also proceeded to hunt geese. He did no shooting. Mr. Hawkins first observed appellant on the section line when they were leaving the field following the morning shoot. After questioning him about his presence, Mr. Hawkins called the Sheriff, which lead to these charges.

It is undisputed that the natural state of this section line was long grass prairie and that it was not long grass prairie on November 25, 1981. It is further undisputed that the fence, utility poles, and the compacted vehicle tracks were also alien to the natural state of the land. There is a gate at the west end of the section line where the defendant and the Hawkins party entered. No crops were grown on the section line in 1981, and there is evidence that it had not been farmed during recent years. Mr. Hawkins testified:

Q. (by Mr. Klinkel) And you are not denying, are you, Mr. Hawkins, that there was a clearly defined set of vehicle tracks going down that section line?

MRS. ROGERS: Objection.

THE COURT: Overruled, he may answer.

A. Yes, there was a trail, track, that went down there.

Q. Was a pair of vehicle tracks, wasn't it?

A. Yes, sir.

Q. I just want to understand we are not talking about a single dirt path, we are talking about two tracks made by vehicles going up and down that section line, isn't that correct?

way for the purpose of facilitating vehicular passage, or highways within parks or recreation areas or within or adjoining public shooting areas or game refuges posted for restriction of an applicable use as hereinafter set forth by the department of game, fish and parks, § 41–9–1 shall not apply to fishing, trapping or hunt-

ing on highways or other public rights-of-way within this state. No person may use the highways or rights-of-way for the purpose of hunting defined in this section within six hundred sixty feet of an occupied dwelling or a church or schoolhouse or within like distance of livestock on adjoining land.

A. Yes.

Q. And it was even more obvious than these photographs with some snow on them show, wasn't it?

A. Yes, it was.

The photographs below show the tracks as they existed on November 25, 1981, except there was then no snow.

At some places, the tracks were deeper than the length of an expended shotgun shell, as shown by the Exhibit below.

It further appears that the section line was likely cleared of rocks to avoid damage to vehicles. Under cross-examination, Mr. Hawkins gave these answers:

Q. (by Mr. Klinkel) If there had been any rocks down that section line, the first time those vehicles had driven down there, I imagine they would have either moved the rocks or driven around them, wouldn't you?

A. Probably moved them.

Q. So would it be fair to say that if there is a pretty well defined set of vehicle tracks going down that section line, that you are not likely to run your oil pan over some big boulder sitting there?

A. No.

Q. If there had been originally, they would have been moved?

A. There are no rocks there.

The evidence does not indicate that the section line has ever been vacated or relocated. It runs east and west. On the west end, well-traveled roads go north, south, and west. Hunters sometimes met Mr. Hawkins at the Garrett ranch and they would then proceed less than a mile north to the east end of this section line which also has an entrance gate.

Mr. Garrett testified that he regularly travels this road for farming purposes or checking cattle and that there is no extension from the east end because he owns all of the land in that area. The evidence does not show to what extent any part of the section line is used to service the utility poles and wires.

SDCL 41–9–1.1 was amended in 1981 to include the unimproved section line exception. The uncontradicted evidence shows the amendment was prompted when a venturesome goose hunter attempted to hunt geese on a completely unidentified section line in a pasture. It seems this individual engaged a surveyor, platted out and drove stakes in the ground to determine the section line. He then undertook to hunt geese from the hills and ravines on a section line

paralleling the Missouri River. The rancher and the Stockgrower's Association apparently took a dim view of this maneuver. Two unsuccessful legislative attempts to ban section line hunting followed. The 1981 amendment apparently was a compromise worked out by stockmen and sportsmen in an effort to prevent unreasonable intrusions while essentially preserving the traditional South Dakota right to road hunt.

■ When SDCL 41–9–1 and 41–9–1.1 are read together in the light of that background, we see this intent. If the section line is totally unimproved for passage (like the pasture) then it is not a public road for hunting and must be treated as private land. Conversely if it is improved at all [3] for passage, then it is open to hunting without permission from anyone.

Public highways are under the exclusive control of some unit of government. Private land is under the exclusive control of its owner. Where hunting on a public highway is prohibited, it is enforced by the sovereign and not by any private land owners. Accordingly, the right to hunt on public land does not stem from, or depend upon, private land ownership. The permission requirement of SDCL 41–9–1 applies only if the section line is a totally unimproved section line. Then it is considered private land and not a road for hunting purposes. It follows that the right to road hunt is not an exception to SDCL 41–9–1. This conclusion comports with the language of SDCL 41–9–1 which expressly makes SDCL 41–9–2 (private land in part of the Black Hills) its only exception. We proceed therefore to treat the right to hunt on highways as the general rule. The "unimproved section line" provision is expressly made an exception to that rule in SDCL 41–9–1.1.

■ A party invoking the protection of an exception to a general law must show himself clearly within the terms of the exception. *Paddock v. Balgord,* 2 S.D. 100, 48 N.W. 840 (1891). Exceptions in statutes generally "should be strictly, but reason-

---

**3.** Controlled access and interstate highways excluded.

ably, construed; they extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception." *Lien v. Rowe,* 77 S.D. 422, 92 N.W.2d 922, 924 (1958).

There is along every section line in this state a public highway by operation of law. SDCL 31–18–1. SDCL 31–18–2 provides that statutory section lines are 66 feet wide and shall be taken equally from each side of the section line. These statutes are of territorial vintage. In *Costain v. Turner County,* 72 S.D. 427, 36 N.W.2d 382, 383 (1949), we said:

In the year 1866 Congress declared that: 'The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.' The legislature of Dakota Territory enacted Ch. 33 S.L. 1870–1871 stating: 'That hereafter all section lines in this Territory shall be and are hereby declared public highways as far as practicable: * * *.' The law in effect at the time provided that public highways along section lines 'shall be sixty-six feet wide and shall be taken equally from each side of the section line' unless changed as provided by law. The federal statute made the dedication, the territorial statute accepted it, and at the same time designated the location of highways. (citations omitted).

Since statehood, these statutes have consistently been construed liberally in favor of the right of the public to have access to, and use of, section lines. *Costain, supra; Pederson v. Canton Township,* 72 S.D. 332, 34 N.W.2d 172 (1948); *Riverside Township v. Newton,* 11 S.D. 120, 75 N.W. 899 (1898); *Wells v. Pennington County,* 2 S.D. 1, 48 N.W. 305 (1891). We view these rules of construction in the further light of our recent decision, *State Theatre Co. v. Smith,* 276 N.W.2d 259 (S.D.1979), wherein Justice Henderson wrote that "[i]n ascertaining the intention of the statute, the court's interpretation should not prejudice the public interest or impair an existing right unless language within the statute requiring it to have such operation is so clear that no

reasonable doubt can exist of such intention." *Id.* at 263 (citation omitted).

We do not agree that the usual liberal construction allowing public use of section lines cannot be extended to this section line because it benefits only hunters and goes nowhere from the east end. In *Sample v. Harter,* 37 S.D. 150, 156 N.W. 1016 (1916), we held that "fowling" is a public purpose sufficient to justify making section lines available for public travel.

This contention is based upon the grounds that said roads lead to no other place or objective point than the said lakes, and that the public has no ownership or beneficial interest in said lakes that would warrant the expenditure necessary to make said highways passable. With this contention we cannot agree. Conceding, as claimed by appellant, that said lakes can be used by the public for no purpose other than boating, fishing, *fowling,* bathing, and taking ice, we cannot say that the benefits to be derived therefrom are not commensurate with the cost of making said section lines available for public travel. (emphasis supplied)

*Id.* at 1017–18.

■ Mindful of these guidelines, we conclude that while this section line may not be commonly used as a public right-of-way, it does fail to meet the second exception requirement. It is not an unimproved section line banned to public hunting. It has clearly been altered from its natural state in some ways, for the purpose of facilitating vehicular passage. We refrain from agonizing over whether farm vehicles, goose hunters, utility service vehicles, or others made the compacted tracks. The statute does not so mandate. Any alteration suffices. "The power to create exceptions by construction can never be exercised where the words of the statute are free from ambiguity and its purpose plain." *Brady v. Cooper,* 46 S.D. 419, 193 N.W. 246, 247 (1923) (citation omitted).

The position of appellee would put in question the public's right to hunt on hundreds of miles of ungraded section line

grass roads in South Dakota that are regularly traveled during the pheasant season. Since the Legislature has repeatedly refused to ban road hunting, we do not believe such a restrictive interpretation of the 1981 amendment was so intended.

The judgment of the trial court is reversed.

WOLLMAN and HENDERSON, JJ., concur.

DUNN and MORGAN, JJ., dissent.

DUNN, Justice (dissenting).

The crucial issue here is whether the land in question was an unimproved section line, not commonly used as public rights-of-way, and never altered from its natural state in any way for the purpose of facilitating vehicular passage. SDCL 41–9–1.1.

The majority opinion indicates that this language was intended to apply only to pasture land on the vast ranches in the west river country. I would agree that it does apply to such pasture land, but it equally applies to section lines that have been cultivated right up to the fence, as is the case here. The pictures clearly indicate that the section line has been cultivated. The tracks involved here do not appear to be well-worn trails. In particular, the picture showing the expended shotgun shell, appears to be a fresh rut perhaps caused by either Mr. Garrett or Mr. Hawkins while driving during the hunting season when the land was wet. None of the pictures reveal any improvement or alteration from its natural state to facilitate vehicular traffic. In fact, it appears to be cultivated ground which would make vehicular traffic more difficult.

I cannot concur that a rancher or his renter cannot drive along one of these fence lines for the purpose of moving machinery, checking cattle, or taking people to a goose pit without opening up this section line to hunting. I would affirm the conviction.

I am authorized to state that Justice MORGAN joins in this dissent.