Decided 22 June, 1903.

## WALLOWA COUNTY *v.* WADE.

[72 Pac. 793.]

ACCEPTANCE OF EASEMENT GRANTED BY CONGRESS FOR HIGHWAYS.

1. The continuous use of a road over unoccupied government land by the public for twenty years, during thirteen years of which the road has been located by a court proceeding, and marked by the public surveyor, amounts to an acceptance of the easement granted by the act of Congress of July 26, 1866 (Rev. Stat. U. S. § 2477) for the construction of highways over government lands not reserved for public use.

HIGHWAYS OVER PUBLIC LAND — RIGHTS OF SUBSEQUENT PURCHASER.

2. After the right to use certain government land for a public highway has become fixed, one subsequently acquiring title thereto takes subject to such easement.

HIGHWAYS BY PRESCRIPTION OVER STATE LAND.

3. Continuous use by the public as a highway of a strip of state land for more than twenty years, during the ownership of the state, establishes a public easement by prescription over such land for highway purposes.

From Wallowa: ROBERT EAKIN, Judge.

Suit by Wallowa County against Aaron Wade to stop the obstructing of a public highway, resulting in a decree as prayed for, from which defendant appeals.    AFFIRMED.

For appellant there was a brief over the names of *J. D. Slater* and *John S. Hodgin,* with an oral argument by *Mr. Slater.*

For respondent there was a brief over the names of *Samuel White,* District Attorney, and *Daniel W. Sheahan,* with an oral argument by *Mr. Andrew M. Crawford,* Attorney-General, and *Mr. Sheahan.*

MR. JUSTICE BEAN delivered the opinion.

This is a suit to enjoin the defendant from obstructing a public highway running through sections 24, 25, and 36 in township 1 south of range 44 east of the Willamette Meridian, in Wallowa County.    All of sections 24 and 25, except one forty-acre tract, was unoccupied public land of the United States until 1901, when it was settled upon under the homestead law.    The forty-acre tract was taken as a homestead in 1896.    Section 36 was school land, belonging to the state, until January, 1901, when the defendant contracted for its purchase.    The road in question is a part of a highway from the Town of Joseph, in the southern part of the county, leading north a distance of about twenty-four miles by and near the Town of Enterprise, and was traveled by the public as early as 1880.    In 1888, upon a petition of the requisite number of householders, and after notice thereof, the county court appointed view-

ers and a surveyor to lay out and locate a county road along the same route, who thereupon proceeded to lay out, survey, and locate the road, from the Town of Joseph north, following as near as they could the then traveled road. Upon the coming in of their report, it was approved by the county court, and the road established and ordered opened. From that time the use by the public of that part of the road now in controversy was continuous and uninterrupted until 1901, when the defendant, by permission of the homestead claimants, built a fence across it near the south line of section 24, and another through the center of section 36. The purpose of this suit is to enjoin the maintenance of such fences, and, the decree of the trial court being in favor of the plaintiff, defendant appeals.

That the road was used continuously by the public as a highway for more than ten years prior to the construction of the fence by the defendant is clearly shown by the testimony. S. A. Hart, who has lived near the north end of the road since 1883, and was one of the chain carriers at the time it was surveyed, in 1888, says that it was in use by the public as a road when he first knew it, and has been continuously used ever since; that he and the settlers in that portion of the county have used it since 1888, supposing it to be a public highway by reason of the action of the county court; that over sections 24, 25, and 36 the travel has held to the old, original track, although there has been some slight variation; that during all this time it has been a plain, open, well-beaten track, and has been traveled by all the people that live in that section of the county; that it is the only road used by them in going to and returning from the county seat; that through sections 24, 25, and 36 the road passes through a cañon or gulch, and there is practically but one track. George S. Craig has lived in the county for twenty years, and has known the road during that time. He testifies that it has

been traveled by the public continuously as a highway, and he supposed that it was a county road since 1888; that through sections 24, 25, and 36 the road runs through a cañon, and there has been but one track or roadbed used by the public, and witness never noticed that it had been changed. J. B. Olmsted and others, who have known and used the road since 1883 and prior to that time, testify substantially to the same state of facts. Indeed, upon this question there is practically no controversy in the testimony. That of the defendant was directed mainly to showing that the road over the land inclosed by him had never been worked or improved by the county authorities, or under their direction, and that it had been obstructed or changed from the original survey at other places along the route. The position of the plaintiff is that, at the time the road in controversy was obstructed by the defendant, it was a public highway, and had become such by (1) establishment under the statutory proceedings; (2) dedication and acceptance; and (3) prescription and user. The objection of the defendant to the statutory proceedings is that the petition upon which they were based was insufficient to give the court jurisdiction, because it did not sufficiently describe the beginning, intermediate, or terminal points of the proposed highway. This question we shall not now stop to examine.

1. The county court, acting upon such petition and a notice given as required by law, caused the road to be surveyed and marked out upon the ground, and this was followed by continuous user by the public for more than thirteen years prior to the construction of the fence by the defendant. This is sufficient to amount to an acceptance of the grant made by Congress, and for the establishment of a highway over state land, either by dedication or prescription: *Bayard* v. *Standard Oil Co.* 38 Or. 438 (63 Pac. 614); *Nosler* v. *Coos Bay R. Co.* 39 Or. 331 (22 Am. & Eng.

R. Cas. 720, 64 Pac. 644).   In 1866, Congress passed an act
(Act July 26, 1866, c. 262, § 8, 14 Stat. U. S. 253) providing
that "the right of way for the construction of highways over
public lands not reserved for public use is hereby granted":
Rev. Stat. U. S. § 2477 (U. S. Comp. St. 1901, p, 1567).
While the language of this act is somewhat indefinite and
uncertain, it has usually been construed as a present grant
of an easement over public lands for highways, and that it
is not confined to technical public highways, but is appli-
cable to railways and toll roads : *Flint & P. M. Ry. Co.* v.
*Gordon,* 41 Mich. 420 (2 N. W. 648); *Wason Toll Road Co.*
v. *Townsite of Creede,* 21 Land Dec. Dep. Int. 349, 351;
*Pasadena Toll Road Co.* v. *Schneider,* 31 Land Dec. Dep. Int.
405.   "The object of the grant," say the Supreme Court
of South Dakota, "was to enable the citizens and residents
of the states and territories where public lands belonging
to the United States were situated to build and construct
such highways across the public domain as the exigencies
of their localities might require, without making them-
selves liable as trespassers. And when the location of the
highways and roads was made by competent authority or
by public use, the dedication took effect by relation as of
the date of the act; the act having the same operation
upon the lines of the road as if specifically described in it":
*Wells* v. *Pennington County,* 2 S. D. 1 (48 N. W. 305, 39
Am. St. Rep. 758).   The act of Congress is more than a mere
general offer to the public, being in effect a dedication of
the land, which becomes operative and relates back to the
date of the act whenever the public, either by user or by
some appropriate act of the highway authorities, affirm-
atively manifests an intention to use a certain definite
portion of the public land as a highway.   The right is
necessarily indefinite, and, in a sense, floating and liable
to be extinguished by a sale or disposition of the land

43 *Or.*—17.

until the highway is surveyed and marked on the ground, or in some other way identified or designated; but when the public authorities lay out and locate a road over public land of the United States by surveying and marking it on the ground, or by some legislative act, or when it is shown by user, the right becomes complete, and an intention to accept the dedication is manifested, and subsequent settlers on the land take subject to the easement. The next year after the act of Congress referred to, the legislature of Kansas passed an act declaring all section lines in a certain county to be highways; and it was held that it amounted to an acceptance of the dedication by Congress, and that when the land passed into private ownership it was taken subject to the easement: *Tholl* v. *Koles*, 65 Kan. 802 (70 Pac. 881). To the same effect is *Wells* v. *Pennington County*, 2 S. D. 1 (39 Am. St. Rep. 758, 48 N. W. 305).

2. In *Streeter* v. *Stalnaker*, 61 Neb. 205 (85 N. W. 47), it was held that long-continued user by the public, together with a survey, marking out, platting, and improvement by public authorities, was sufficient to show an acceptance of the dedication. In that case it is said: "By this act the government consented that any of its lands not reserved for a public purpose might be taken and used for public roads. The statute was a standing offer of a free right of way over the public domain, and as soon as it was accepted in an appropriate manner by the agents of the public, or the public itself, a highway was established." In *McRose* v. *Bottyer*, 81 Cal. 122 (22 Pac. 393), there was no action whatever by the public authorities, and nothing shown but user by the public. The court held that sufficient, saying: "The fact that the land was public land of the United States at the time the right to use it as a public way was acquired, and also at the time the use of it ceased, makes no difference. The act of Congress of 1866 (Section 2477, Rev. Stat. U. S., U. S. Comp.

St. 1901, p. 1567,) granted the right of way for the construction of highways over public land not reserved for public uses. By the acceptance of the dedication thus made, the public acquired an easement subject to the laws of this state; and the easement not having been extinguished by the operation of such laws, when the defendant acquired the title to the land, she took it subject to the easement." In *Smith* v. *Mitchell*, 21 Wash. 537 (58 Pac. 668, 75 Am. St. Rep. 858), the same doctrine is announced; the court holding that a highway may be established over public land in any of the ways recognized by the laws of the state. In deciding the case, Mr. Chief Justice GORDON, speaking for the court, said: "It is a well known fact that many of the public highways in this state had their inception in adverse user, which ripened into prescription. The act of Congress already referred to does not make any distinction as to the methods recognized by law for the establishment of a highway. It is an unequivocal grant of right of way for highways over public lands, without any limitation as to the method for their establishment, and hence a highway may be established across or upon such public lands in any of the ways recognized by the law of the state in which such lands are located; and in this state, as already observed, such highways may be established by prescription, dedication, user, or proceedings under the statute. Any other conclusion would occasion serious public inconvenience." We take it, therefore, that the long-continued user by the public shown by the testimony in this case, together with the action of the county authorities in surveying and locating a road over and through sections 24 and 25, was, under the construction thus given to the act of Congress, an acceptance of the dedication, and sufficient proof of a public highway.

3. Section 36 was school land, and belonged to the state until 1901. Prior to the act of February 10, 1903 (Laws,

1903, p. 18), the statute of limitation ran against the state the same as against a private individual, and its title to school land could be extinguished by adverse possession : B. & C. Comp. §§ 4, 13 ; *Ambrose* v. *Huntington,* 34 Or. 484 (56 Pac. 513); *Schneider* v. *Hutchinson,* 35 Or. 253 (57 Pac. 324, 76 Am. St. Rep. 474). The proof shows abundantly that the road had been used continuously through this section for more than twenty years by the public as a highway, under a claim of right, prior to the acquisition of the land by the defendant; and this was sufficient to establish the highway, as against the state, by prescription or adverse user (Elliott, Roads & Sts., 2 ed., § 175), even if the surveying, locating, and filing the plat thereof was not of itself a dedication of the land to the public for a highway, if followed by user by the public for that purpose : *Hanlin* v. *Chicago & N. W. Ry. Co.* 61 Wis. 515, 526 (21 N. W. 623). The county is an agency of the state in the location of highways, and there is reason for the position that the act is binding on its principal, even if not valid as against a private individual because of irregularities or imperfections. But a decision of the question is not necessary at the present time. The decree of the court below is affirmed. Affirmed.

<br>

Decided 16 March, rehearing denied 3 August, 1903.