REIFF *v.* REDFIELD SCHOOL BOARD.

Opinion delivered December 18, 1916.

1. CONTRACTOR'S BOND—PUBLIC WORK—RIGHT OF MATERIALMAN.—Where a bond is executed pursuant to Act 446, p. 462, General Acts of 1911, providing that a contractor's bond given thereunder, for the faithful performance of public work, shall inure to the benefit of those furnishing labor and materials, an action may be maintained thereon by one of such persons to recover for services rendered or material supplied in the fulfillment of the contract.

2. CONTRACTOR'S BOND—LIABILITY OF SURETY.—A building contractor's bond given to secure the performance of a contract to build a schoolhouse, held to have been executed in accordance with the terms of Act 446, p. 462, General Acts of 1911.

3. PUBLIC OFFICERS—SCHOOL DIRECTORS.—School directors are public officers, and the rules respecting their powers are the same as those that are applicable to the powers of public officers generally.

4. BONDS—NAME OF OBLIGEE—MISTAKE—EFFECT.—A bond executed under Act 446, p. 462, General Acts of 1911, is not affected by a mistake in the naming of the obligee, where it clearly appears that it was intended that the bond was taken pursuant to the statute.

5. CONTRACTOR'S BONDS—LIABILITY ONLY FOR MATERIALS USED.—A contractor's bond, executed under Act 446, General Acts of 1911, is liable only for materials that are actually used in the construction of the building.

6.  CONTRACTOR'S BOND—LIABILITY OF SURETY—CONVERSION OF PROP-
    ERTY.—A surety on a contractor's bond, executed under Act 446,
    General Acts of 1911, will be liable for a conversion by it of materials
    furnished for the construction of the improvement, but a co-surety,
    who had no part in such conversion will not be so liable.

7.  CONTRACTOR'S BOND—PUBLIC WORK—LIABILITY OF SURETY.—The
    surety on a bond executed pursuant to Act 446, General Acts of 1911,
    is presumed to know that the bond is executed as though the terms
    of the statute were a part thereof.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau*, Chancellor; affirmed.

*Carmichael, Brooks, Powers & Rector*, for appellants.

1. The bond was not given as required by Act No. 446, Acts 1911, p. 462. The bond was to the Redfield School District; the bondsmen did not qualify; the sureties were not approved by the clerk nor was the bond filed according to law. It does not contain the proper recitals. There can be no recovery. 86 Ark. 212; 17 *Id.* 483; 79 *Id.* 550; 74 *Id.* 545; 81 *Id.* 235; 100 *Id.* 253; 109 *Id.* 508; 111 *Id.* 379; 126 Am. St. 1095.

2. The Redfield School District sustained no injury. 65 Ark. 27.

3. Defendants are bound only according to the terms of the bond. 60 C. C. A. 623; 79 Ark. 530.

4. There was no liability unless the material and labor went into and became part of the improvement. Kirby's Digest, § 4970; Act 446, Acts 1911; 85 Ark. 158.

*Mehaffy, Reid & Mehaffy*, for appellee.

1. The fact that the bond was made to the school district instead of the State is not material. The object of the bond was to guarantee the performance of the contract. 8 Neb. 344; 1 N. W. 243, 347; 17 Wend. 67; 26 *Id.* 502; 27 N. W. 233; 52 *Id.* 567-8; 64 *Id.* 1050; 32 Pac. 466; 51 Ark. 205; 10 *Id.* 89; 128 Pac. 266. The bond was not void but was available to anyone sustaining injury. 17 Wend. 67; 26 *Id.* 502; 25 Ky. 472; 84 Fed. 114.

2. School directors are public officers. 81 S. W. 1237; 88 *Id.* 1; 79 N. E. 481; 84 Ark. 540; 87 S. W. 941; 49 *Id.* 705; 77 Va. 518; 22 Pac. 628. The bond was intended to secure all materialmen. 86 Ark. 212; Acts 1911, p. 464, § 3. No statutory bond is void for want of form. Kirby's Digest, § 6368.

3. The materialmen have the right to sue on the bond. 111 Ark. 373; 115 N. W. 811; 117 S. W. 611; 126 *Id.* 530; 159 Ill. App. 139; 134 S. W. 18; 32 Pac. 466; 53 N. E. 793; 21 N. W. 83; 56 N. E. 680; 46 S. W. 625; 6 Cyc. 83; 168 S. W. 61; 42 S. E. 858; 105 N. W. 319; 160 S. W. 270; 151 N. W. 942; 138 N. W. 102.

HART, J. On February 19, 1915, the Board of Directors of Redfield School District and the Clark Pressed Brick Company, of Malvern, Arkansas, instituted this action in the chancery court against the Aetna Accident & Liability Company, J. W. Sanders and H. F. Reiff, to recover $527.56 and the accrued interest alleged to be the balance due for 85,000 bricks that were used in the construction of a school house by said school board. The material facts are as follows:

On the 27th day of June, 1914, the Redfield School Board of Redfield, Arkansas, entered into a contract in writing with S. A. Sanders to erect a school building for the district for the consideration of $6,100.00 to be paid him by the district. The contract contained plans and specifications as to the manner of the performance of the work, but inasmuch as none of its provisions, except article 5, have any bearing on the issues raised by the appeal we need only refer to that article.

Article 5 provided, in substance, that should the contractor at any time fail in any respect to prosecute the work with diligence or fail in the performance of any of the agreements of the contract, upon such neglect or failure being certified by the architect, the owner shall have the right after three days written notice given, to terminate the employment of the contractor and take possession of the premises for the purpose of completing the work and may employ any other persons to finish

the work and provide the materials therefor. Sanders entered into a bond in the sum of $12,500.00 with J. W. Sanders, H. F. Reiff and the Aetna Accident & Liability Company as his sureties, payable to the Redfield School Board for the faithful performance of the contract. One of the conditions of the bond was that S. A. Sanders should faithfully and promptly perform and keep all the conditions and agreements contained in the contract and should pay for all labor and materials for same.

S. A. Sanders, the contractor, died September 12, 1914, before the school house was finished. The work on the building ceased after his death and the school board gave written notice to his sureties of that fact and notified them that within three days from that date the board would take possession of the building and complete it according to the terms of its contract with Sanders. At the expiration of three days, the board took possession of the building and completed it according to the terms of the contract. It was proved that the Clark Pressed Brick Company, of Malvern, Arkansas, had shipped to the contractor 85,000 brick to be used in the construction of the school house and that all of these brick went into the construction of the building except about 11,000; that of these, 4,000 were used in another school house and that 7,000 were sold for $42.00 at the instance of the agent of the Aetna Accident & Liability Company; that there was $527.56 and the accrued interest due the brick company.

The chancellor found that all the bricks furnished went into the building except 11,000, and that there was due the Clark Pressed Brick Company $527.56 with $46.44 interest; that the Aetna Accident & Liability Company is liable for 7,000 of the brick which were sold by reason of having authorized and directed the sale of said brick, but that as to the 4,000 brick which were not sold, and which were not used in the construction of the building, that neither of the defendants were liable. A decree was entered in accordance with

the findings of the chancellor and the case is here on appeal.

The defendant Reiff was engaged in the lumber business and furnished lumber to the contractor to be used in the construction of the school house in question, and procured the Aetna Accident & Liability Company to sign the bond and agreed to indemnify it from all losses thereunder. He signed the bond as surety because he was interested in the contract to the extent that he was furnishing the contractor the material that went into the school house.

The correctness of the decision of the chancellor holding the sureties liable depends upon whether or not the bond was executed pursuant to Act 446 of the Acts of 1911 and the construction to be given thereto. See General Acts of 1911, p. 462. Section 2 of the Act reads as follows:

"Section 2.    Public Officers—Whenever any public officer shall, under the laws of this State, enter into a contract in any sum exceeding one hundred dollars, with any person or persons, for the purpose of making any public improvements, or constructing any public building, or making any repairs on the same, such officer shall take from the party contracted with, a bond with good and sufficient sureties to the State of Arkansas, in a sum not less than double the sum total of the contract whose qualifications shall be verified, and such sureties shall be approved by the clerk of the circuit court in the county in which the property is situated, conditioned that such contractor, or contractors shall pay all indebtedness for labor and material, furnished in the construction of said public building, or in making said public improvements."

(1)    In the absence of a statute the right to sue on a public contractor's bond given to the owner of the property for labor and material furnished is dependent entirely on the terms of the bond. Without some provision promising to pay the laborers and materialmen, an action cannot be maintained. This is the effect of our decision in *Eureka Stone Co.* v. *First*

*Christian Church*, 86. Ark. 212, and *Russellville Water & Light Co.* v. *Sauerman*, 109 Ark. 501.    On the other hand where a bond is executed pursuant to the statute providing that a contractor's bond given thereunder for the faithful performance of public work shall inure to the benefit of those furnishing labor and materials, it is well settled that an action may be maintained thereon by one of such persons to recover for services rendered or material supplied in the fulfillment of the contract.    Case note to Ann. Cas. 1916 A, at p. 761, and many cases from quite a number of states are cited.

In such cases the purposes contemplated by the legislative requirement, as to the bond to be given, are not merely to secure the public in respect to the accomplishment of the work contracted for, but it is also intended to secure or protect those doing labor or supplying materials for the contractors, even though there may be no responsibility on the part of the public agency to them.    It is contended by counsel for the defendants that the bond in question was not executed pursuant to the statute above quoted, but we cannot agree with counsel in this contention.    It will be noted that the statute requires that the bond be "conditioned that such contractor, or contractors shall pay all indebtedness for labor and material furnished in the construction of said public building, or in making said public improvements."    One of the conditions of the bond is that "they (referring to principal and sureties) will pay for all labor and materials for the building."

(2-3)    The undertaking of the bond follows the statute and we are clearly of the opinion that it was the intention of the parties to execute a bond in compliance with the terms of the statute.    The bond was filed in the office of the clerk of the circuit court in the county where the school house was to be erected and was approved by him.    It is also insisted that the board of school directors are not public officers within the meaning of the statute but in the case of *A. H. Andrews Co.* v. *Delight Special School District*, 95 Ark. 26, it was

held that school directors are public officers and that the rules respecting their powers are the same as those that are applicable to the powers of public officers generally. That is to say, that in addition to the powers given by the statute to a board of officers it has by implication such additional powers as are necessary for the due and efficient exercise of the powers expressly granted or which may be fairly implied from the statute granting the express powers.

This court in *Blanchard* v. *Burns*, 110 Ark. 515, recognized that school directors were public officers within the meaning of the statute in question. There it was held that the directors of a school district are not individually liable to a person furnishing building material to a contractor who was building a school house because of their failure to require a bond of the contractor as provided in Act 446 Public Acts of 1911, p. 463.

(4) It is insisted that the bond was not executed under this Act because the school district and not the State as required by the Act is named as the obligee in the bond. We do not agree with counsel in this contention. In *State* v. *Wood*, 51 Ark. 205, the court held that the bond of a county treasurer, by the terms of which he and his sureties bind themselves that he shall truthfully account for and pay over all moneys which may come to his hands by virtue of his office is valid, although it names no obligee; and that under our statute, the State may bring an action on such bond for the use of the county to replace money never legally drawn from the treasury and for the amount of which the treasurer is a defaulter. This case was cited in *Ihrig* v. *Scott*, 32 Pac. 466, by the supreme court of the State of Washington, where it held that a contractor's bond given to the directors of a school district under a statute providing that when public buildings are erected the contractors shall give bond, is not void in naming the obligee, because the statutory form is not followed. The court said, "That a mistake in the naming of the obligee is not a fatal defect in a bond which is executed

pursuant to the requirements of a statute, in the interest of the public, when, notwithstanding such error, it clearly appears from the bond taken as a whole that it was intended to be such a one as is required by the statute, is fully established by the authorities. (See *State* v. *Wood*, 51 Ark. 205; *Bay County* v. *Brock,* (Mich.) 6 N. W. 101.) The simple fact, then, of the want of the proper obligee in this bond, is not fatal to it, if, from its terms, the object for which it is executed appears."

In *Bay County* v. *Brock*, Judge Cooley said, in substance, that while the statute in such cases ought to be obeyed literally, yet, that, in so far as it names the nominal obligee in the bond, it is to be regarded as a directory provision merely. That the obligee is not named because of any interest in the condition but merely that there may be a promisee and a party in whose name to bring suit. As said by Judge Cockrill in *State* v. *Wood*, *supra*, the reason is stronger for the enforcement of the rule since the adoption of the Code, for an action in such cases might be prosecuted by the State, as a trustee of an express trust, or by the real party in interest—that is, by the person entitled to receive the money, who in this instance, is the material-man. See also *Huffman* v. *Koppelkom*, 8 Neb. 347, 1 N. W. 243; *Crook Co.* v. *Bushnell*, 13 Pac. 886.

(5) Again it is contended by counsel for the defendants that the sureties on the bond are not liable for material that did not go into the construction of the building. In construing Section 4970 of Kirby's Digest, giving materialmen a lien for materials furnished for any building by virtue of a contract with the owner, the court held that the materials furnished for a building must be actually used in it before a lien will be acquired. *Central Lumber Co.* v. *Braddock Land and Granite Co.*, 84 Ark. 560. This construction resulted from the language of the statute giving the lien. So we think from the language of the statute in the present case, that it is only intended to make the bond liable

for materials that were actually used in the construction of the building.

(6)    In the instant case the secretary of the school board testified that of the 85,000 brick furnished, all but 11,000 were used in the construction of the building and the court held that the sureties were only liable under the bond for the amount of the brick used in erecting the school house. Of the remaining 11,000 brick shipped to the contractor, but not used in erecting the building, 4,000 of them were used in another school house by the directors and the court properly held that the sureties on the bond were not liable for the value of these brick. The Aetna Accident & Liability Company directed that the other 7,000 brick should be sold and the court held it to be liable therefor, not because of its being surety on the bond, but because it took charge of the brick and authorized and directed their sale. This amounted to a conversion of the brick and the court properly held the Aetna Company liable therefor. The defendant Reiff was not properly held liable for the sale of these brick because he did not authorize or direct the sale thereof.

(7)    Finally it is insisted that there is no liability on the bond under the facts. Counsel claim that the evidence shows that the school board refused to allow the bondsmen to finish the job on the death of Mr. Sanders and that they spent more money than was necessary to complete the school building according to the contract.

We do not deem it necessary to express an opinion as to whether or not the facts are as contended by counsel as we prefer to rest our decision upon the issues squarely presented by the pleadings. This bond was given pursuant to a statute for the protection of persons furnishing materials and labor for the construction of public buildings. The construction placed by the plaintiffs upon the condition of the bond is not correct. It means that the contractor will pay his laborers and materialmen as he has agreed with them, and this is what the act intends. The contractor's bond pro-

vided by the statute is for their use and security and the sureties are presumed to know the statute, the terms of their undertaking, the character and responsibility of the contractor and his ability to carry out his contract. In short, the sureties are presumed to have understood the nature and extent of their principal's obligation when they signed the bond. The statute in question is a part of their contract and they must be presumed to have known that the covenant in the bond was made for the benefit of the laborers and materialmen. The evidence shows that the decree was only for the materials that went into the building. Thus it becomes immaterial to decide whether or not the district paid more money than was necessary to complete the school building according to the contract or refused to allow the bondsmen to complete the building. It is true the school district was made a party to this action but it was only a nominal party. The only question at issue was whether or not the bondsmen were liable to the brick company for materials furnished and used in the construction of the building.

It follows that the decree must be affirmed.