EAST END SCHOOL DISTRICT No. 2 *v.* GAISER-HILL LUMBER COMPANY.

Opinion delivered January 25, 1932.

*W. A. Utley,* for appellant.

*Tom Digby* and *Malcolm Gannaway* and *McDaniel & Nall,* for appellees.

MEHAFFY, J. The appellant is a school district in Saline County, formed by the consolidation of three districts. It became necessary for the appellant to erect and equip a new school building, and arrangements were made for borrowing the money from the revolving loan fund. An election was had, and tax voted for the payment of the loan. The amount borrowed was $10,000.

The district undertook to purchase the material and have some person to supervise the work. The directors of appellant agreed with W. H. Rodgers that they would furnish the material and pay the labor, and allow him $55 per week for his services. This agreement was entered into on April 7, 1930.

Rodgers further agreed that he would complete the building in seventy-two working days, and that he would execute an acceptable bond as a guarantee that said building would not exceed in total cash the amount set and agreed to by party of the first part, the expense of said bond to be paid by party of the first part.

On the same date, April 7, 1930, the directors of the district signed the following instrument:

"April 7, 1930.

"We hereby, the parties of the first part, do here this day enter into an agreement with W. H. Rodgers, of the second part, to furnish all material which is to be used in said school building, subject to rejection if not delivered on job according to plans and specifications. Parties of the first part further agree to assist in buying all material that goes into said building, and also agree to furnish the necessary money each Saturday noon to pay off all employees which party of the second part shall have time and payroll made out. We further agree to pay party of the second part the sum of $55 per week, straight time, and to furnish gasoline and oils to be used for the purpose of transacting business for the parties of the first part.

(Signed) "W. B. Garner,
"W. W. White,
"J. T. Wilkerson,
"L. A. Ashley,
"T. R. Wells,
"W. M. Haynes."

Thereafter the directors of the district concluded that it would be necessary to advertise for bids and to let the contract to the lowest and best bidder. They advertised for bids, and Rodgers made a bid that was accepted, and executed a bond with the Home Accident Insurance Company as surety.

Rodgers' bid was accepted, but no new contract was made with him. The bid was $8,229.73.

The bond was executed by Rodgers as principal and the Home Accident Insurance Company as surety, in the sum of $8,229.73.

The following statement is in the bond:

"Whereas, the principal has entered into written contract dated April 7, 1930, and amended by a supplemental agreement dated May 2, 1930, whereby the principal agrees to supervise the construction of a school building in East End School District No. 2 of Saline County, Arkansas, said district agreeing to furnish and pay for all material entering into the construction of said building, and to furnish the necessary funds each week to pay the labor employed on it, a copy of which is hereto annexed, and which contract is made a part hereof, as fully as if recited at length herein."

Before the work was completed Rodgers quit the job, left the country, and the building was completed by agreement between the directors and surety company.

Suit was filed in the Saline Chancery Court by Gaiser-Hill Lumber Company and M. J. Ketcher, trading as M. J. Ketcher & Company, against the school district, its directors, W. H. Rodgers, and the Home Accident Insurance Company.

The suits brought by Gaiser-Hill Lumber Company and M. J. Ketcher & Company were brought as separate suits, but were consolidated and tried together. There was also a suit brought by the Benton Supply Company, and this suit was by agreement consolidated here for the purpose of appellant's brief.

The facts and principles of law are the same in each case, and there is therefore no necessity for more than one opinion.

Each of the suits was for material furnished which entered into the construction of the building. There is but little dispute about the facts. It is not contended that the materials were not furnished, and there is no contention that the materials furnished did not go into the building.

The school district, in its answers, denied liability; alleged that the building was erected by Rodgers, and not by the school district; that Rodgers was not merely a supervising contractor. It says that the supplies were sold to Rodgers, and that the bond was a statutory bond, and that the building was a public building, and that appellees knew, or could have known, that it was a public improvement. It also alleged that all of the funds received from the revolving loan fund were expended by the district in accordance with the contract entered into between said district and Rodgers; that, if appellees had any claim for material furnished, it was a claim against the contractor and bonding company, and not against appellant.

The court entered a decree in favor of Gaiser-Hill Lumber Company for $676.96, together with 6 per cent. interest from July 26, 1930, and for costs. It also entered judgment in favor of M. J. Ketcher for the sum of $601.50, with interest at the rate of 6 per cent. per annum from July 10, 1930, and costs. There was a judgment entered in favor of the Benton Supply Company for $681.48.

The claim for lien upon the school building and land upon which it was located was denied in each case, and the complaints for liens dismissed for want of equity.

The district prosecutes an appeal in each case.

It is contended by the appellant that it is not liable for the payment of these claims, and that appellees should look either to the contractor or to the bonding company for payment, and appellant states that the correctness of the decision of the chancellor, holding the district liable, depends in a great measure on the construction of §§ 6913 and 6914 of Crawford & Moses' Digest. The sections referred to read as follows:

"Section 6913. *Public buildings.* Whenever any public officer shall, under the laws of this State, enter into a contract in any sum exceeding one hundred dollars, with any person or persons for the purpose of making any public improvements, or constructing any public

building, or making repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties to the State of Arkansas, in a sum not less than double the sum total of the contract, whose qualifications shall be verified, and such sureties shall be approved by the clerk of the circuit court in the county in which the property is situated, conditioned that such contractor or contractors shall pay all indebtedness for labor and material furnished in the construction of said public building, or in making said public improvements.

"Section 6914. *Bond.* Such bond shall be filed in the office of the clerk of the circuit court in the county in which said public improvement is to be made, or such public building is to be erected, and any person to whom there is due any sum for labor or material furnished, or his assigns, may bring an action on said bond for the recovery of said indebtedness; provided, that no action shall be brought on said bond after six months for the completion of said public improvement or buildings."

It is true that school directors are public officers and derive their powers from the statute.

"The law is well settled that school districts are not only authorized to exercise the powers that are expressly granted by statute, but also such powers as may be fairly implied therefrom, and from the duties which are expressly imposed upon them, and such powers are implied when the exercise thereof is clearly necessary to enable them to carry out and perform the duties legally imposed upon them." *American Exchange Trust Co.* v. *Trumann Special School Dist.,* 183 Ark. 1041, 40 S. W. (2d) 770; *A. H. Andrews Co.* v. *Delight Special School Dist.,* 95 Ark. 26, 128 S. W. 361.

School directors are expressly authorized by statute to build, hire, or purchase school houses, and to furnish the same with necessary seats, desks, furniture, fixtures, and fuel. Crawford & Moses' Dig., § 8942.

It is the contention of the appellant that the bond executed by Rodgers as principal and the Home Accident Insurance Company as surety is a statutory bond, and

that it is liable to persons who furnish materials or labor, and that the district is not liable.

Attention is called to the case of *Reiff* v. *Redfield School Dist.*, 126 Ark. 474, 191 S. W. 16: That was the first case where § 6913 of Crawford & Moses' Digest was construed. There have been a number of cases since that time construing this section.

In the case of *Reiff* v. *Redfield School Dist.*, 126 Ark. 474, 191 S. W. 16, it was held that, in the absence of a statute, the right to sue on a public contractor's bond is dependent entirely on the terms of the bond. It held that an action on such bond could not be maintained without some provision in the bond promising to pay laborers and materialmen. The bond involved in that case was made to the school district instead of the State of Arkansas, and the court held that a mistake in naming the obligee was not a fatal defect in a bond which is executed pursuant to the requirements of a statute in the interest of the public, when it clearly appears from the bond taken as a whole, that it was intended to be such a one as is required by the statute; but it was also said in that case that the undertaking of the bond follows the statute. It was filed in the office of the clerk of the circuit court in the county where the schoolhouse was to be erected, and was approved by the clerk. One of the conditions of the bond also was that the surety would pay for all the labor and material for the building, but there is no such undertaking in the bond in the instant case.

The bond in the instant case clearly shows that it was not intended as a statutory bond. It recites that the principal has entered into a written contract dated April 7, 1930, and amended by supplemental agreement dated May 2, 1930, whereby the principal agrees to supervise the construction of the building, said district agreeing to furnish and pay for all materials entering into the construction of the building, and to furnish the necessary funds to pay for labor.

After reciting the agreement that the contractor had entered into with the school district, the bond continues:

"Now therefore the condition of this obligation is such that, if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure .of the principal to faithfully perform said contract, then this obligation shall be void; otherwise, to remain in full force and effect."

It will be observed that the undertaking was to indemnify the obligee, the school district, against any loss or damage by reason of the failure of the principal to perform the contract. But what contract was to be performed? Evidently the contract mentioned in the bond, showing that the principal was to supervise the construction of the building, and that the district was to pay for the material and labor. There is no provision in the bond anywhere for the payment for material or labor. On the contrary, it clearly appears that the district was to pay for the labor and material, and there is no undertaking on the part of the surety to pay for either labor or material. Moreover it is expressly provided in the bond that no right of action shall accrue upon or by reason hereof to or for the use and benefit of any one other than the obligee named in the bond.

The statute provides that the bond shall be conditioned that such contractor or contractors shall pay all indebtedness for labor and material furnished in the construction of said public building. When the bond itself recites that it will not be liable for the things mentioned in the statutes, this indicates that it was not intended to be a statutory bond.

Appellant calls attention to the case of *Blanchard* v. *Burns,* 110 Ark. 515, 162 S. W. 63, 49 L. R. A. (N. S.) 1199, which held that the statute provided that the bond be placed of record, so that all persons dealing with the contractor may know whether the bond has been executed, and that appellant was chargeable with notice whether or not the bond had been given. However, in that case it was sought to hold the directors liable. There was a demurrer interposed to the complaint, and the court held that the

1172

allegations of the complaint must be taken as true for the purpose of testing the sufficiency of the demurrer.

It is also true that, in the case last mentioned, the directors had entered into a contract with the contractor, not to supervise the work, but to construct the building. That being a contract for a public building, the directors were held not liable for material furnished to a contractor.

In this case there was no contractor for the construction of the building, but the district, through its directors, expressly agreed that it would furnish material and labor. If the appellant and its directors had entered into a contract for the construction of the building, and had taken a bond as provided by statute, then the contractor and surety alone would have been liable.

It is also true that, if the board of directors had entered into a contract for the construction of a public building and had not given a bond, the contractor alone would have been liable. The directors would not have been personally liable, and, they having contracted with a contractor to construct the building, the contractor to furnish labor and material, there would, of course, be no liability of the directors or district where the material was sold to the contractor.

If the directors had entered into a contract for the construction of the building, it would then have been their duty to take a bond from the contractor, as required by § 6913. But they did not do this. It is true that, when they concluded they would have to let the contract to the lowest bidder, they took bids, but they never did enter into any contract with Rodgers except the one above mentioned, where they employed him at $55 per week to supervise the construction of the building.

Under the contract, the most that the directors would have been required to pay Rodgers was $660; $55 a week for not exceeding seventy-two working days, and the statute provides that, when they let a contract for the construction of a building, the bond shall be in a sum not less than double the sum total of the contract.

If they had entered into a contract for the construction of the building, the principles announced in *Blanchard* v. *Burns, supra,* would apply. But they had a right to make the contract they did make, and construct the building in that way, and, having decided not to let the contract for the construction, but to furnish the labor and material themselves, and hire some one to supervise it for them, they were not required under the statute to require any bond at all, and the principles of *Stewart-McGehee Co.* v. *Brewster,* 171 Ark. 197, 284 S. W. 53, apply. In that case it was said:

"It will be observed that it is not obligatory upon the owner of the improvement to require the principal contractor to execute a bond. He may do so or not, as he deems it to his interest. Likewise, the contractor is not required by virtue of the law to execute a bond. He may refuse to do so. It is entirely a matter between the contractor and the owner as to whether the bond required by statute shall be executed. But, where such bond is required by the owner and executed by the principal contractor, then the persons for whose use and benefit the bond is executed must look to the bond as their security for the payment of their claims, and not to a lien on the improvement."

In the instant case, if the bond had provided that the contractor should pay for labor and material, then the surety would be liable, but there is no such provision in this bond.

In the case of *Stewart-McGehee Construction Co.* v. *Brewster, supra,* the bond, by its express terms, bound the contractor and sureties for the use of material furnishers, and other persons having claims which might be the basis of liens, etc. The same is true of the bond in *Lena Lumber Co.* v. *Brickhouse,* 173 Ark. 348, 292 S. W. 1007.

In the case of *Ætna Casualty & Surety Co.* v. *Big Rock Stone & Material Co.,* 180 Ark. 1, 20 S. W. (2d) 180, the condition of the bond was that the contractor should pay off and discharge claims for labor and material.

In the case of *Mansfield Lumber Co.* v. *National Surety Co.,* 176 Ark. 1035, 5 S. W. (2d) 294, the bond was not approved by the clerk nor filed as required by statute, but the bond contained the provision for satisfying all claims and demands, and the court said:

"While the bond is not a statutory bond, in that it was not executed in the manner provided by the statute, its provisions and conditions are broad enough to cover the liability imposed by the statute, had it been executed as the statute provides. We are of the opinion therefore that the bond was not executed for the sole benefit of the owner, but for the benefit of materialmen and laborers as well."

In the instant case, the bond does not provide for the payment of either labor or materials, but expressly states that it is made for the sole benefit of the obligee, the school district, and this court, in a recent case construing § 6913 of Crawford & Moses' Digest, said:

"Here the statute simply makes it the duty of the public officers to take a bond of a certain character, and does not impose any regulations whatever upon the contractor, and does not provide expressly or impliedly that the parties shall not enter into any bond except pursuant to the statute, or which would, in any way, modify or annul any provisions of the statute." *Fidelity & Deposit Co. of Maryland* v. *Crane Co.,* 178 Ark. 676, 12 S. W. (2d) 872.

The bond in the instant case does not contain any provision showing that it was intended to be executed in obedience to the provisions of the statute, but, on the contrary, expressly negatives that idea.

It is next argued by appellant that a contract entered into beyond the powers conferred by statute is null and void. The statute, however, as we have already said, expressly authorizes school directors to build school-houses and equip the same.

The decree of the chancery court in each case is correct, and is therefore affirmed.