Irene GIRVES, Appellant,

v.

KENAI PENINSULA BOROUGH,
Appellee.

No. 2016.

Supreme Court of Alaska.

June 13, 1975.

Denis R. Lazarus, Anchorage, for appellant.

Kenneth P. Jacobus of Hughes, Thorsness, Lowe, Gantz & Powell, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

OPINION

CONNOR, Justice.

This appeal presents questions concerning the Kenai Peninsula Borough's power and right, if any, to construct a road on property homesteaded by appellant, without providing compensation to her.

I.

In 1958 appellant, Irene Girves, entered upon a homestead, pursuant to a "Notice of Allowance" issued to her by the Department of the Interior. In 1961 she obtained a patent for the property from the United States.

The northern boundary of Girves' property constituted a section line within what is now the Kenai Peninsula Borough. Sometime subsequent to 1961 the Kenai Peninsula Borough constructed a junior high school on the land adjoining this northern boundary line.

Redoubt Drive, prior to construction of the school site, ran along the section line, but terminated approximately one-quarter mile east of the boundary line between appellant's property and the school site. In 1967 the city of Soldotna extended Redoubt Drive west in order to provide access to the school site.

The Kenai Peninsula Borough then constructed a "pad" which, in effect, extended Redoubt Drive for road purposes.[1] Since this road extension rested partially on appellant's property, she brought suit against the borough, seeking damages for its alleged wrongful trespass. At the trial below, the court found that a right-of-way

1. At trial Girves argued that the extended area was not developed for road purposes, but, on appeal, appellant concedes that the project was filled for road purposes.

existed for road purposes along the section line. The jury found that the "pad" constructed by the borough was utilized for road purposes. Girves was awarded nothing, and the borough was awarded $6,500 in attorney's fees.

Girves' appeal from this adverse judgment raises three general issues:

(1) Did the Kenai Peninsula Borough have the power to build a road on appellant's property?

(2) Did a right-of-way exist so that the borough need not compensate appellant for its encroachment on her property?

(3) Was the award to the borough of $6,500 in attorney's fees erroneous?

We shall address each of these questions in turn.

## II.

Appellant contends generally that, at the time the borough constructed the road, it lacked the power to engage in such activity. Specifically, Girves asserts that the trial judge erred in refusing to give requested Instruction No. 19, which reads as follows:

"The Court instructs the jury that the law of Alaska provides that second-class boroughs are governments of limited powers, and that second-class boroughs do not have the authority or power to acquire, construct or maintain rights-of-way, roads or streets."

In support of this assertion of error, appellant argues that, at the time of the road construction, the Kenai Peninsula Borough's powers were limited to those enumerated in former AS 07.15.010 et seq. (§ 3.01 et seq., ch. 146, SLA 1961),[2] which did not encompass road-building powers.

The borough initially responds to this claim by arguing that Girves failed at trial to specify her grounds for objecting to the court's refusal to give requested Instruction No. 19. The borough relies on Alaska Civil Rule 51(a) which states, in part:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

Civil Rule 51(a) is intended to ensure that a trial judge is clearly made aware of the precise nature of the alleged error.[3] In the present case we find that prior to the court's decision regarding instructions, appellant had argued, at great length, her contentions regarding the applicable law. Since the trial judge was made fully cognizant of appellant's reasons for the proposed instruction, the purpose for Civil Rule 51(a) has been realized.

The borough also seeks to overcome appellant's claim of error on substantive grounds. It argues, generally, that municipal governments possess implied powers which arise from or are essential to the powers and purposes which are expressly granted.[4] Specifically, the borough asserts that the educational powers conferred upon the borough by former AS 07.15.330(a) necessarily imply the power to provide road access to school buildings. That statute, which was operative at the time the borough constructed the road, provided:

"(a) Each organized borough constitutes a borough school district and the first and second class borough shall establish, maintain, and operate a system of public schools on an areawide basis."[5]

2. Title 7 was repealed in 1972 and this section was superceded at that time by § 2, ch. 118, SLA 1972, now found in AS 29.48.030.

3. Saxton v. Harris, 395 P.2d 71, 73 (Alaska 1964).

4. See generally 2 McQuillan, Municipal Corporations, Section 10.12 at 765 (3d ed. 1966).

5. Compare: As 29.33.050 presently provides: "Each borough constitutes a borough school district and establishes, maintains, and operates a system of public schools on an areawide basis as provided in AS 14.-14.060."

■■ We recognize that insofar as municipal corporations do possess implied powers, such powers are to be strictly construed against the entity claiming them.[6] Nevertheless, we acknowledge that boroughs possess implied powers with regard to education to the extent that they are clearly necessary to the borough's exercise of its express powers in this regard.[7]

At the time that this road project was built, the Kenai Peninsula Borough possessed the express power to "establish, maintain and operate" schools within its borders.[8] In addition, both the state and local school districts have, and did then have, certain express responsibilities concerning the administration, supervision, operation and subcontracting of transportation systems for pupils.[9] Other states have recognized that school districts possess the power to construct transportation related facilities.[10]

■ It is apparent that a school which is inaccessible to transportation would have little or no value. We conclude, therefore, that, since the Kenai Peninsula Borough possessed the express power to "establish, maintain and operate" the school, it implicitly possessed the power to establish access to the site as well.

■ Appellant argues that the road project was not intended to provide access to the school. We have reviewed the transcript from the trial court and find that appellant never directly argued this point

below. Furthermore, there was extensive collateral testimony which demonstrates that the road did provide access to the school. Appellant's assertion in this regard is simply not supported by the record.

### III.

Appellant also argues that the borough had no right to build a road across her property without compensating her for it.

■ At the outset Girves notes that neither her "Notice of Allowance", nor her patent contained any express reservation of rights-of-way in favor of any public body. However, the absence of an express reservation of easement does not preclude the borough from showing that a right-of-way was established prior to the issuance of these documents.[11]

The borough claims a right-of-way in reliance upon 43 U.S.C. § 932 (1964).[12] That statute provides:

"The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

Girves first contends that neither the territorial nor state governments of Alaska had the power to accept this grant from the United States. She supports this argument by reference to a 1962 Attorney General's opinion.[13] There the state's Attorney General opined that, pursuant to the Alaska Organic Act, 48 U.S.C. § 77 (1952),[14] "[t]he power to 'dispose of pri-

---

6. *See, e. g.,* Cochran v. City of Nome, 10 Alaska 425, 435 (D.C.Alaska 1944).

7. *See, e. g.,* East End School Dist. No. 2 v. Gaiser-Hill Lumber Co., 184 Ark. 1165, 45 S.W.2d 504, 506 (1932); Cedar Rapids Community School Dist. v. City of Cedar Rapids, 252 Iowa 205, 106 N.W.2d 655, 657 (1960). *See also* Lindsay v. White, 212 Ark. 541, 206 S.W.2d 762, 767 (1947).

8. *See* former AS 07.15.330(a) (repealed 1972).

9. AS 14.09.010. *See* Kenai Peninsula Borough v. State, 532 P.2d 1019 (Alaska, 1975).

10. *Cf.* City of Bloomfield v. Davis County Community School Dist., 254 Iowa 900, 119 N.W.2d 909, 912–13 (1963); Austin Independent School Dist. v. City of Sunset Valley, 502 S.W.2d 670, 675 (Tex.1973).

11. State v. Crawford, 7 Ariz.App. 551, 441 P.2d 586, 590 (1968).

12. This statute was orginally enacted in 1866. *See* Act of July 26, 1866, ch. 262, § 8, 14 Stat. 253.

13. 11 Op.Att'y Gen. (Alaska 1962).

14. 48 U.S.C. § 77 provides, in part: "The legislative power of the Territory of Alaska shall extend to all rightful subjects

mary interests in the soil" was not delegated to the Territorial Legislature and, in fact, such power was expressly denied the Territory."[15] In effect, the Attorney General's 1962 opinion reasoned that, since the territorial legislature could not interfere with the federal government's primary disposal of soil,[16] it was powerless to accept the right-of-way granted in 43 U.S.C. § 932 (1964).

■ In McGrath v. Kristensen, 340 U.S. 162, 176–78, 71 S.Ct. 224, 95 L.Ed. 173 (1950), Justice Jackson, in a concurring opinion, noted that an Attorney General's opinion may well be erroneous. Indeed, the Alaska Attorney General has expressly rejected the opinion on which appellant seeks to rely.[17] We hold that the 1962 Attorney General's opinion is in error insofar as it concludes that the territorial government of Alaska had no power to accept the right-of-way granted in 43 U.S.C. § 932 (1964).

Alaska's courts have long recognized the operation of 43 U.S.C. § 932 (1964) within the state or territory.[18] Numerous other territories and states, operating under organic and enabling acts forbidding interference with the primary disposal of soil by the United States, have effectively claimed the right-of-way granted under 43 U.S.C. § 932.[19] Appellant has not cited any case law which holds that the "primary disposal of soils" provision in 48 U. S.C. § 77 (1912) prevents, and renders nu-

gatory, the right-of-way granted in 43 U. S.C. § 932 (1964). Under the circumstances, appellant's contention that the territory or state lacked power to claim the federal grant must be rejected.

Girves also argues that Alaska's territorial legislature did not in fact effectively "accept" the grant at any time prior to her lawful entry on the land. Thus, she concludes, the lower court "erred in finding there existed a right-of-way on the section line" between appellant's and appellee's property.

The borough argues that "35 S.L.A.1953 (now AS 19.10.010) constitute[s] the acceptance of the offer to dedicate made in 43 U.S.C.A. § 932 (1964). [Footnote omitted.]" Ch. 35, SLA 1953 provided as follows:

"Section 1. A tract one hundred feet wide between each section of land owned by the Territory of Alaska, or acquired from the Territory, and a tract four rods wide between all other sections in the Territory, is hereby *dedicated* for use as public highways, the section line being the center of said right-of-way. But if such highway shall be vacated by any competent authority the title to the respective strips shall inure to the owner of the tract of which it formed a part by the original survey." (emphasis added)

Girves contends that the territorial legislature's "dedication" of a four rod tract along all section lines in the territory "can-

---

of legislation not inconsistent with the Constitution and laws of the United States, but no law shall be passed interfering with the primary disposal of the soil; . . . ."

15. 11 Op.Att'y Gen. at 3 (Alaska 1962).

16. 48 U.S.C. § 77 (1952).

17. 7 Op.Att'y Gen. 1, 8 (Alaska 1969).

18. *See, e. g.*, Hamerly v. Denton, 359 P.2d 121 (Alaska 1961); Clark v. Taylor, 9 Alaska 298 (D.C.Alaska 1938).

19. *See, e. g.*, Walbridge v. Board of Commissioners, 74 Kan. 341, 86 P. 473 (1906); Hillsboro National Bank v. Ackerman, 48 N.D. 1179, 189 N.W. 657 (1922); Wells v.

Pennington County, 2 S.D. 1, 48 N.W. 305 (1891).

The relevant territorial organic acts are as follows:
(1) Kansas, ch. 59, § 24, 10 Stat. 285 (1854);
(2) North Dakota, ch. 86, § 6, 12 Stat. 239 (1861);
(3) South Dakota, ch. 86, § 6, 12 Stat. 239 (1861).

The relevant state enabling acts are as follows:
(1) Kansas, ch. 20, § 3, 12 Stat. 127 (1861);
(2) North Dakota, ch. 180, § 4, 25 Stat. 677 (1889);
(3) South Dakota, ch. 180, § 4, 25 Stat. 677 (1889).

not be deemed an acceptance" of the federal grant contained in 43 U.S.C. § 932 (1964).

In Hamerly v. Denton, 359 P.2d 121, 123 (Alaska 1961), we held that:

> "[B]efore a highway may be created, there must be either some positive act on the part of the appropriate public authorities of the state, clearly manifesting an intention to accept a grant, or there must be public user for such a period of time and under such conditions as to prove that the grant has been accepted." [Footnote omitted.]

In *Hamerly* the party claiming the right-of-way sought to do so by proving the existence of a public user. In the present case, the borough in effect claims that the enactment of ch. 35, SLA 1953 was a positive act on the part of an appropriate public authority which clearly manifested an intent to accept the grant in 43 U.S.C. § 932 (1964).

■ Ch. 35, SLA 1953 did not expressly refer to 43 U.S.C. § 932 (1964). But we cannot assume that the legislature was unaware of the grant or unwilling to accept it in behalf of the territory for highways. Tholl v. Koles, 65 Kan. 802, 70 P. 881, 882 (1902).

■ Similarly, ch. 35, SLA 1953 did not expressly "accept" the federal government's dedication of rights-of-way. However, it is well recognized that a state or territory need not use the word "accept" in order to consummate the grant. Tholl v. Koles, *supra*.[20] 43 U.S.C. § 932 (1964) is

in effect, a standing offer from the federal government.[21] All that is needed to complete the transfer is a *positive act* by the state or territory which clearly manifests an intent to accept the offer. Hamerly v. Denton, 359 P.2d 121, 123 (Alaska 1961).[22]

■ We hold that the enactment of ch. 35, SLA 1953 was a positive act clearly manifesting the territorial legislature's intent to accept the federal grant. Our conclusion is bolstered by several observations.

First, if the legislature did not intend to accept the federal grant, then the "dedication" contained in ch. 35, SLA 1953 might be in contravention of the "primary disposal of soils" provision contained in 48 U.S.C. § 77 (1952). Since legislatures generally are presumed to know the law and to intend their enactments to be valid, it is fair to assume that the legislature intended the 1953 "dedication" to also constitute an acceptance of the grant under 43 U.S.C. § 932 (1964).

Second, a fundamental maxim in the analogous field of contract law holds that an acceptance may be implied from acts of conduct.[23] Since it is obvious that one cannot "dedicate" property to which one has no rights, the 1953 "dedication" must have also constituted an act of implied acceptance.

Finally, 43 U.S.C. § 932 (1964) does not make any distinction as to the methods recognized by law for the establishment of highways. Hence highways may be established by any method recognized by law in this state.[24] Dedication is a well recognized method of establishing highways.[25]

---

20. *See also* Pederson v. Canton Township, 72 S.D. 332, 34 N.W.2d 172, 174 (1948); Costain v. Turner County, 72 S.D. 427, 36 N.W.2d 382, 383 (1949).

21. *See, e. g.*, Mills v. Glasscock, 26 Okl. 123, 110 P. 377, 378 (1910); Wallowa County v. Wade, 43 Or. 253, 72 P. 793, 794 (1903).

22. *Accord:* Wildeness Society v. Morton, 156 U.S.App.D.C. 121, 479 F.2d 842, 882 (1973), cert. denied, 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309.

23. *Cf.* Prokopis v. Prokopis, 519 P.2d 814, 817 n. 5 (Alaska 1974). *See generally* 1 A.

Corbin, Contracts § 18, at 39–43, § 77, at 329 (1963).

24. *Accord:* United States v. 9,947.71 Acres of Land, etc., 220 F.Supp. 328, 335 (D.C.Nev. 1963); Wallowa County v. Wade, 43 Or. 253, 72 P. 793, 795 (1903); Smith v. Mitchell, 21 Wash. 536, 58 P. 667, 668 (1899).

25. *See, e. g.*, Lovelace v. Hightower, 50 N.M. 50, 168 P.2d 864, 867 (1946). *See also* 23 Am.Jur.2d, Dedications, § 15, at 14 (2nd ed. 1965).

Thus we conclude that the "dedication" contained in ch. 35, SLA 1953 effectively established the territory's claim to the federal right-of-way grant.

### IV.

Finally, Girves contends that Judge Hanson erred in awarding $6,500 in attorney's fees to the Kenai Peninsula Borough. The claim of error is predicated on the assertion that the court based its award on the "percentage method" of determining attorney's fees, despite the fact that the prevailing party (the borough) did not recover a money judgment.[26]

Following the judgment in its favor, the borough requested $15,470.25 in attorney's fees. A supporting affidavit asserted that the borough's attorneys had spent over 400 hours of legal time on this case. Mrs. Girves opposed the request on the grounds that the amount requested was insufficiently documented and unconscionable.

Judge Hanson listened to oral argument regarding the merits of the requested amount of attorney's fees, and then took the matter under submission. Later he issued a memorandum order awarding the borough $6,500, instead of the $15,470.25 requested.

■ Our review of attorney's fee awards is limited to determining whether the trial court has exceeded the bounds of the wide discretion vested in it.[27] We will only overturn an award if it is manifestly unreasonable.[28]

■ Under normal circumstances, we would affirm the award because it would be well within the confines of Civil Rule 82. But we are impressed with certain distinct aspects of this case which render it, in our opinion, unfair to impose attorney's fees upon appellant. This case concerns the implied powers of borough governments, as well as interpretations of public laws relating to rights-of-way. Appellant relied upon a 1962 Attorney General's opinion in support of her legal contentions although, as we have mentioned, that opinion, was negated by a later one in 1969.

We think that appellant, faced with these conflicting opinions, properly pursued her claims. In so doing she litigated several important public questions. She should not be penalized for having done this. We hold that it was error to award an attorney's fee to appellee and to that extent we reverse the judgment below.

Affirmed in part, reversed in part.

FITZGERALD, J., did not participate.

26. Alaska Civil Rule 82(a) provides, in part:

"(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

### ATTORNEY'S FEES IN AVERAGE CASES

|  |  | Contested | Without Trial | Non-Contested |
|---|---|---|---|---|
| First | $2,000 | 25% | 20% | 15% |
| Next | $3,000 | 20% | 15% | 12.5% |
| Next | $5,000 | 15% | 12.5% | 10% |
| Over | $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

(2) In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered."

27. See, e. g., Malvo v. J. C. Penney Company, Inc., 512 P.2d 575, 586–87 (Alaska 1973).

28. Id.